## FOSTER VS. THE CITY OF KENOSHA.

Where a municipal corporation is created without any express restriction upon its power to levy taxes or raise money, it can exercise that power only for legitimate municipal purposes, the power of the corporation in that respect being limited by the object and purpose of its creation.

The legislature cannot confer upon a municipal corporation an *unlimited* power to levy taxes and raise money, aside from and above what may be necessary and proper for legitimate municipal purposes; the grant of such unlimited power being inconsistent with section 3, of Article XI, of the constitution, which requires that the legislature, in organizing such corporations, "shall restrict their power of taxation, assessment, borrowing money, contracting debts," &c.

That section of the constitution does not contain a grant of power to the legislature to organize cities, but is a restraint upon that power.

A provision in the charter of a city that no tax shall be levied or money be borrowed beyond what may be needed for legitimate municipal purposes, without the previous sanction of a majority of the voters, is not a limitation upon its power to levy taxes or contract debts, within the meaning of that section of the constitution. The duty of imposing the proper limitation belongs to the legislature, and cannot be transferred to others.

An amendment to the charter of the city of Kenosha, declared that the city council should have power to levy and collect special taxes for any purpose (aside from what was specially provided for in the original charter), which might be considered essential to promote or secure the common interest of the city, or might borrow on the corporate credit of the city for such pur-

poses, *any* sum of money for any term of time, &c., but that no such tax should be levied or money borrowed, except in accordance with a section of the original charter, which provided that no such tax should be levied, or money be borrowed, without the consent of a majority of the voters, who should vote upon the question at a special election to be held for that purpose. Afterwards the city of Kenosha subscribed $150,000 to the stock of the Kenosha and Beloit Railroad Company, in pursuance of the vote of a majority of the legal voters of said city, and issued scrip to the amount of $66,000 in part payment therefor, and levied a tax to provide for the payment of said scrip. In a suit by a tax-payer in said city, to restrain the collection of said tax, it was *held*, that said amendment to the charter of said city was in conflict with section 3, of Article XI, of the constitution; that the act of the city council in creating said debt, was unauthorized, and that the collection of said tax should be restrained.

June Term, 1860.

FOSTER v. THE CITY OF KENOSHA.

Whether it follows that the scrip so issued is void, the court does not, in this action, determine.

APPEAL from the Circuit Court for *Kenosha* County.

This was an action to enjoin the city of Kenosha from collecting a certain tax levied upon real estate in said city for the purpose of paying scrip issued by said city upon its subscription of $150,000 to the stock of the Kenosha and Beloit Railroad Company. A temporary injunction having been granted, on the application of the plaintiff, and the defendant having filed a motion to dissolve such temporary injunction, the court, after a hearing, made an order denying the motion, from which the defendant appealed.

*Head & Lynde*, for appellant, contended that the legislature has a right, with the consent of the local authorities, to tax a particular city or locality for the construction of a local improvement (*Weeks vs. City of Milwaukee*, 10 Wis., 242; *Soens vs. City of Racine*, id., 271); and that under sec. 44 of the "act to incorporate the city of Kenosha," and sec. 8 of the act to amend the same, the city had power to levy the tax in question. *Nichol vs. Mayor, &c., of Nashville*, 9 Humph., 266; *L. & N. R. R. vs. The County Court of Davidson County*, 1 Sneed, 640.

*F. S. Lovell*, for respondent, contended that sec. 8 of the "act to amend the charter of the city of Kenosha," approved March 23, 1853, as it purported to confer upon the city *un limited* power to levy taxes and borrow money, was in violation of sec. 3, art. XI, of the constitution of this state.

June Term,
1860.

FOSTER
v.
THE CITY OF
KENOSHA.

November 19.

*By the Court*, COLE, J.   This complaint was filed by the respondent on his own behalf, and on behalf of other land owners, to restrain the city of Kenosha from collecting a special tax of $18,625, levied by the city upon the real estate therein situated, for the purpose of paying a debt originally contracted by the stock subscription of the city to the Kenosha & Beloit R. R. Co.   This subscription was made under and by authority of section 8 of an act to amend the charter of the city of Kenosha, and of section 44 of the charter, and also by virtue of an ordinance of the common council, submitting the question to the legal voters, whether a tax "of one hundred and fifty thousand dollars should be levied and collected, for the promotion of the common interest of the city, in aid of the Kenosha & Beloit Railroad," &c., and authorizing the mayor to subscribe, in the name of the city, that amount, to the capital stock of the company, provided a majority of the legal voters was in favor of such tax.

The counsel for the respondent contends that section 8 of the act to amend the charter of the city (which is above referred to,) is unconstitutional, and as a necessary consequence, that the action of the common council under that section, was unauthorized and void.   This section, he insists, is in conflict with section 3, art. XI of the constitution, and such is our opinion.   That provision of the constitution reads as follows :   "It shall be the duty of the legislature, and they are hereby empowered, to provide for the organization of cities and incorporated villages, *and to restrict their power of taxation, assessment, borrowing money, contracting debts, and loaning their credit, so as to prevent abuses in assessments and taxation, and in contracting debts, by such municipal corporations.*"   Section 8 of the act amending the charter reads :   "The city council shall have power to levy and collect special taxes for any purpose (aside from what may be specially provided for in the city charter), which may be considered essential to promote or secure the common interest of the city, or may borrow on the corporate credit of the city, for such purposes, any sum of money, for any term of time, at any rate of interest not exceeding ten per centum, and payable at any place that may be deemed expedient.

Bonds or scrip may be issued therefor under the seal of the corporation, and the resources and credit of the city are pledged for the repayment of the sums so borrowed, with the interest on the same. All such moneys shall be expended under the direction of the city council. But no such tax shall be levied, or money borrowed, except in accordance with the provisions of section 44 of the city charter, and in all cases when questions under this section are submitted to qualified voters, the amount and object of the proposed tax or loan shall be specifically stated, to be voted upon." * * (Chap. 110, Private Laws, 1853, p. 304.)

Here, it will be seen, is an unlimited grant of power to the common council of the city to levy and collect special taxes, or borrow money on the credit of the city, for any purpose whatever which may be considered essential to promote the common interest of the city. The common council have authority to contract debts to any amount, impose taxes for any and all conceivable objects and purposes; embark the finances and credit of the city in any enterprise which, in the judgment of the common council, will contribute to the wealth, prosperity or trade of the city, or promote the social and material condition of its citizens. There is no limitation, no restriction imposed by the legislature upon the power of the corporation to run in debt or burthen the people with taxes. If the common council deem it expedient, and a majority of the voters of the city will sanction the policy, the city, in its corporate capacity, may carry on works of internal improvement, at home or abroad, so that those works are calculated to stimulate the trade and increase the business of the city. No matter how ruinous and oppressive these special taxes might be to the owners of real estate, or to the minority of the tax payers, yet we do not see why, under this section of the charter, the common council and a majority of the qualified voters, might not compel the city to become a stockholder in a line of steamboats, to run up and down the lakes for transportation of freight and passengers; subscribe for stock in railroads; improve harbors; open roads and build bridges within or without the city limits; erect and operate flouring mills; keep hotels; or in short,

embark in any mercantile, manufacturing or commercial enterprise, which, in the language of the charter, "may be considered essential to promote or secure the common interest of the city," and pledge the resources and credit of the city for the repayment of all sums borrowed for these purposes, and impose taxes to meet the same. Now the question arises, can the legislature confer upon a municipal corporation such unlimited power of taxation, such unrestrained ability to contract corporate indebtedness and mortgage the real estate of the city? If it had merely organized the city government, without imposing any restraint upon the power of taxation and of raising money, then the corporation could only have imposed taxes and raised money for legitimate municipal purposes. The power of the corporation over these matters would have been limited by the object and law of its creation. A municipal corporation is organized for political and governmental purposes, and is invested with such powers as are necessary or incidental to the purposes of local government. The right of taxation can be exercised by the municipal corporation only to raise money to meet the expenses incident to the city government, and the exercise of its political powers; for as to such objects only does the necessity of taxation exist, and not to enable the city to embark in any enterprise or business which may be deemed profitable or advantageous to the people at large. In this state the constitution imposes upon the legislature the duty, when providing for the organization of cities and incorporated villages, to restrict their power of taxation, of borrowing money, contracting debts, and loaning their credit, so as to prevent abuses in assessments and taxation, and in contracting debts, by such municipal corporations. This provision of the constitution would be a dead letter, entirely inoperative and of no effect, if section 8, amending the city charter, can stand. For, as already observed, that provision of the charter confers upon the city council the most unlimited power to levy taxes and run in debt. It does not confine the common council to municipal purposes when exercising the right of taxation. They had this power by the original charter. That gave the authority to levy all the taxes, and raise all

June Term, 1860.

Foster
v.
The City of Kenosha.

the money, necessary to carry on and support the government. But this amendment was intended to confer a right of taxation beyond that given in the charter, and for other than municipal purposes. It is a power to impose special taxes to any amount, and for any purpose whatever, which may be considered essential to promote or secure the common interest of the city. I do not think the legislature could confer upon any municipal corporation such unlimited, such absolute power of taxation. More especially is the legislature restrained from conferring such power under a constitution which imposes upon it the duty, in organizing cities and villages, *to restrict their power of taxation*, borrowing money, and contracting debts. It is very clear that this provision of the constitution does not contain a grant of power to the legislature to organize cities, but is a restraint upon that power. The legislature possessed the power to incorporate cities. This was incident to its general legislative power. This provision was undoubtedly placed in the constitution by its framers with full knowledge that the legislature then possessed, and would continue to possess and exercise, the power of authorizing municipal corporations to levy taxes and borrow money, and it was intended that the legislature should not give this authority without restricting it so as to prevent abuse and oppression. This evidently was the object and design of the constitutional provision. Now can the legislature disregard it entirely? Can it confer upon a municipal corporation the right to impose taxes to any amount, and for any purpose? We think not. And therefore, when the legislature attempts to confer upon a municipal corporation an unrestricted power to levy taxes and raise money, aside from and above what may be necessary and proper to support the local government, and for legitimate municipal purposes, such unlimited grant of power must be held to be void. Otherwise, no force or effect is given to the provision of the constitution cited.

Nor do we consider it a sufficient answer to this objection, to say that the legislature properly restricted the power of the corporation to levy taxes and contract debts, when they provided that no tax should be levied, or money borrowed,

under sec. 8, unless a majority of the voters should be in favor of levying the tax or making the loan. For in the latter case the restriction would be one imposed rather by the people than the legislature. Besides, if a majority of the qualified electors were in favor of the tax, then the common council would have the power to impose it without limit. Thus the minority would be oppressed, and at the mercy of a bare majority of the electors. And one of the great advantages and blessings of a written constitution, above all others, is that the minority can invoke its protection against the demands and oppression of a violent majority. It may be said that, according to the structure of our society and government, the people are regarded as the safest depositary of political power, and that to make the authority of levying taxes and running in debt, depend upon the votes of a majority of the qualified electors of the corporation, would be the very best check which the legislature could devise to prevent abuse in the exercise of this power. But such is not the theory of the constitution. The powers of our government are divided into three departments, and agents are chosen by the people to exercise and put in action these several powers of the government. The law-making power is vested in the legislature. That is the department of the government to organize cities and incorporate villages. The constitution gives the legislature that power, and does not leave it with the people. And it contemplates, when the legislature does organize a city, and confers upon the local authorities powers of taxation, and of raising money, that it should do so with proper restrictions and limitations, so as to prevent abuse, and protect the minority of the electors from the oppression and tyranny of the majority. The legislature cannot divest itself of this duty and transfer it to the people.

To prevent all misapprehension, however, we will say that we do not suppose an act of the legislature creating a municipal corporation, but imposing no restriction upon the power of such corporation to levy taxes and borrow money, would necessarily be void for that reason. In such a case, the city authorities would only have power to levy taxes and

raise money to support the local government, and for proper municipal purposes. And although the wants of municipal corporations are great, still they are not unlimited. The corporation could undoubtedly raise all the revenue sufficient for strictly municipal expenditures, but could not raise any and all moneys for every purpose which might promote the common interest of the city. No one can doubt but that the dredging out of the St. Clair Flats, or excavating the Rapids of the Mississippi river, would most essentially promote the common interest of all towns and cities along the lakes and that river; still, imposing taxes for the purpose of accomplishing these works, could hardly be said to be raising money for municipal purposes in any of them. It may be difficult to define, in advance, what is strictly embraced in the words " municipal purposes." There is no kind of doubt, however, that there are many things, and many branches of business, which promote in an essential degree the interest of towns and cities, and yet which the municipal corporation has no right to carry on.

We have endeavored to show that the unlimited grant of power of taxation and contracting debts, attempted to be conferred upon the common council by section 8 of the act amending the charter of the city of Kenosha, was in conflict with section 3, article 11, of the constitution, and must fall. As a necessary result, the act of the common council, under that section, in creating the debt for the payment of which the tax mentioned in the complaint was levied, cannot be sustained. Whether this would render the scrip of the city, issued in pursuance of that action of the common council, void, or not, we will not attempt to determine in this proceeding. It is sufficient here to state that we consider the tax mentioned in the complaint unauthorized, and that, within the decisions of this court in the cases of *Walker vs. Carpenter* (unreported), and *Dean vs. The City of Madison*, 9 Wis., 402, the respondent has the right to restrain the city authorities from collecting the same.

The order of the circuit court, refusing to dissolve the injunction herein granted, is affirmed.