## FISK VS. THE CITY OF KENOSHA.

CONSTITUTIONAL LAW: *Limitation of power of city to contract indebtedness.—City Scrip.—Legislative ratification.*

1. The provisions of ch. 100, P. & L. Laws of 1853, authorizing the city of Kenosha to borrow money and issue bonds or scrip therefor, being void for want of any *limitation* upon the amount of such indebtedness (*Foster v. Kenosha,* 12 Wis., 616), the scrip issued under that provision, and disclosing on its face the purpose of its issue, is also void.
2. A subsequent statute recognizing the right of the city to redeem said scrip, although it might be a sufficient *ratification* of its issue if the original defect had been merely a lack of the legislative *consent, held* not to give validity to the scrip in this case, because no definite sum is therein named, and it does not appear that the legislature knew the amount of indebtedness which would be covered by its terms, and therefore no performance is shown of the constitutional duty of the legislature to *limit* such amount.

APPEAL from the Circuit Court for *Milwaukee* County.

Section 44 of the charter of the City of Kenosha (approved February 8, 1850) provides that no tax shall be levied, nor money or other property borrowed, for the purpose of constructing a certain harbor, mentioned in sec. 43, "unless a majority of the voters possessed of a freehold estate, or occupying lots upon leases, on

which lots they pay the taxes, who shall actually vote
upon the question, shall first in each year determine to
raise such a tax or authorize such loan;" and it pro-
vides further for holding such an election.    Section 8
of an act to amend said charter, approved March 23,
1853 (ch. 110, P. & L. Laws of 1853), declares that the
city council "shall have power to levy and collect
special taxes for any purpose (aside from what may be
specially provided for in the city charter), which may
be considered essential to promote or secure the com-
mon interest of the city; or may borrow on the corpo-
rate credit of the city, for such purposes, any sum of
money for any term of time, at any rate of interest not
exceeding ten per centum, and payable at any place
that may be deemed expedient.    Bonds or scrip may
be used therefor, under the seal of the corporation,
and the resources and credit of the city pledged for
the repayment of the sums so borrowed, with the inter-
est of the same.    All such moneys shall be expended
under the direction of the city council.    But no such
tax shall be levied or money borrowed except in accord-
ance with the provisions of section 44 of the city
charter; and in all cases, when questions under this
section are submitted to qualified voters, the amount
and object of the proposed tax or loan shall be specifi-
cally stated, to be voted upon."

In 1855, the common council, by ordinance, submit-
ted to the qualified voters of the city the question
whether a tax to the amount of $150,000 should be
levied and collected in aid of the Kenosha and Beloit
Railroad, viz.: $50,000 in each of the years 1856, 1857
and 1858; and, at the election held upon that question,
a majority of the votes were in favor of the levy and
collection of such a tax.    In April, 1856, three orders
upon the city treasurer, signed by the mayor and coun-
tersigned by the clerk of the city, each for the sum of
$22,000, payable on the 1st of January of the years
1857, 1858 and 1859, respectively, were delivered to

said railroad company, and a certificate of stock in said company for $66,000 received in return. An act of the legislature, approved October 2, 1856 (ch. 479, P. & L. Laws of 1856), provides for the election by the qualified voters of said city, in November following, and annually thereafter, of "a railroad commissioner for said city," and makes it his duty "to attend all meetings of the stockholders of the Kenosha and Beloit Railroad Company, and to vote in person  *  *  on all shares of stock held by the city of Kenosha in the stock of said company, he being entitled to one vote for every share of stock so held." It further declares that "said officer shall have generally the charge and control of all interest the city of Kenosha now has, or may hereafter have," in said railroad, and "shall be *ex officio* a member of the board of directors" of said company, etc. It appears that such a commissioner was elected in November, 1856. At some time, apparently in 1856 or 1857, such action was had, by the city authorities and the holders of the three city orders above mentioned, that the same were surrendered and canceled, and smaller orders, or scrip, to the same aggregate amount, and payable at the same dates, issued in place of them; and in 1859, by direction of the city council, new scrip was again issued for the principal and accrued interest of so much of the last mentioned issue as then remained unpaid; the new issue being payable in 1860, 1861 and 1862, at a reduced rate of interest.

Chapter 133, P. & L. Laws of 1857, entitled "An act to consolidate and amend the act to incorporate the city of Kenosha, and the several acts amendatory thereof," provides for the annual election of a railroad commissioner, and invests him with powers similar to those defined in the act of 1856 above cited. It further declares that "he shall receive all funds paid into the hands of the city treasurer on account of the tax for the benefit of the Kenosha and Beloit Railroad

Company, and shall, hereafter, redeem all scrip which has been issued to said railroad company as the same becomes due, making such provisions therefor, or recommending such measures to the common council, as he may deem necessary for the protection and benefit of the tax-payers of the city." The act also provides that "the common council shall have power annually, or more frequently, to levy and collect a tax * * to pay the bonded debt of the city, or the interest thereon, and shall have power to issue new bonds, when necessary to meet such indebtedness, for such time, and at such rates of interest, as they may deem expedient;" but that "bonds shall be issued for no other purpose than to meet such indebtedness," except as thereinafter provided. The provision so referred to is similar to that contained in section 44 of the original charter as amended by section 8 of the act of 1853, above cited, with reference to the borrowing of money and levying of taxes in pursuance of a vote of the tax-payers. Chapter 148, P. & L Laws of 1859 (approved March 17, 1859), provides that the common council shall "have generally the charge and control of all interest the city of Kenosha now has or may hereafter have in the Kenosha, Rockford and Rock Island Railroad" (which is the successor of the Kenosha and Beloit Railroad); empowers the council to appoint from time to time some suitable person to represent the interest of said city in said railroad; declares such person an *ex officio* member of the board of directors of said railroad, with power also to vote in all meetings of the stockholders thereof upon the shares of stock held by the city, etc.; and repeals the conflicting provisions of the amended charter of 1857. Chapter 152, P. & L. Laws of 1862, authorizes the city of Kenosha "to issue new bonds in exchange for the bonds and scrip heretofore issued by said city, now outstanding and unredeemed, or for the judgments heretofore rendered thereon, for the purpose of compromising the indebtedness of said city," etc.

The present action was brought to recover the amount of certain city orders or scrip issued in 1859, as above stated, to take up others issued in 1856 or 1857, which again were substituted for the three orders for $22,000, each issued in 1855, and first above mentioned. The defendant appealed from a judgment in plaintiff's favor.

*John W. & A. L. Cary*, for appellant, relied upon sec. 3, art. 11 of the state constitution,* and *Foster v. The City of Kenosha*, 12 Wis. 616.

*O. S. Head*, for respondent, contended, 1. That sec. 8, ch. 110, P. & L. Laws of 1853, under which the scrip was issued, imposed such a restriction on the corporate power of the city as answered the requirements of sec. 3, art. 11 of the constitution. The declared purpose of the provision in that section is simply to restrict the power of the corporation *so as to prevent abuse.* It does not prescribe any particular kind of limitation, nor the manner in which the restraint shall be imposed. This is left to the legislative discretion; and the legislature has exercised its discretion on the subject by requiring that all propositions to borrow money or levy taxes for purposes like the one here in question shall be submitted to a vote of the tax-payers themselves. This the legislature deemed a sufficient restriction to prevent abuse; and the exercise of its discretion upon that subject is not subject to the review or control of the court. Cooley's Const. Lim. 41, 168, 187; *Bank of Rome v. Rome*, 18 N. Y. 38; *Clarke v. Janesville*, 10 Wis. 186; *Dean v. Madison*, 7 id. 691; *Grant v. Courter*, 24 Barb. 232; *Moers v. Reading*, 21 Pa. St. 189; *R. R. Co. v. Clinton County*, 1 Ohio St. 77. 2. That the city had ratified the issue of the scrip by levying a tax and paying a portion of it, and by electing a railroad com-

---

* Constitution of Wisconsin, art. 11, sec. 3. "It shall be the duty of the legislature, and they are hereby empowered, to provide for the organization of cities and incorporated villages, and to restrict their power of taxation, assessment, borrowing money, contracting debts and loaning their credit, so as to prevent abuses in assessments and taxation, and in contracting debts by such municipal corporations."

missioner, whose duty it was to represent the interest which the city had acquired in the railroad company by virtue of the issue of this scrip and the delivery to the city of stock therefor.    3. That ch. 479, P. & L. Laws of 1856, and ch. 133, P. & L. Laws of 1857, and the other acts above recited, constituted a legislative ratification of the issue of said scrip.

PAINE, J.   This is an action upon scrip issued by the *City of Kenosha* under that section of its charter which was declared unconstitutional and void by this court in *Foster v. Kenosha*, 12 Wis. 616.   It was stated in that opinion that we should not attempt to determine in that proceeding, which was merely to restrain the levy of a tax, whether the scrip issued under that section was void or not.   This was said because that question was not directly in the case, and because it was not proper then to anticipate the question, what might be the rights of a *bona fide* holder of such scrip for value.

That question is now presented.   And we think it necessarily follows from that decision that the scrip is void.   It may be regarded as settled, that although the construction of railroads, and other similar works of internal improvement affecting directly the commercial prosperity of municipal corporations, is to such an extent a municipal purpose that these corporations may be permitted to lend their aid, by legislative authority, yet it is not such an ordinary, general municipal purpose as to be within the scope of the authority of every municipality, without express provision.   That section of the charter being void, the city had, then, no authority whatever to subscribe for the stock for which this scrip was originally issued, and consequently no authority to issue the scrip for that purpose.

It is not necessary now to determine what might be the effect if a city, having general power to issue scrip

of a negotiable character for ordinary municipal purposes, should issue such scrip for some unauthorized purpose, the scrip, however, not disclosing such purpose upon its face, and it should pass into the hands of a *bona fide* holder for value. ' That question is not presented. This scrip discloses on its face that it was issued by the city in aid of the Kenosha and Beloit Railroad Company. Every purchaser of such scrip would be bound to see that the proper legislative authority had been granted. And though practically it may often work hardship upon purchasers to charge them with the responsibility of determining, at their peril, upon the validity of statutory provisions, yet it is necessarily involved in the requirement that they must ascertain that the municipality, whose obligations they purchase, had lawful authority to issue them; and the hardship, whatever it is, is no greater than exists in all those cases where individuals are bound, at their peril, to know the law.

There was no statute authorizing, or professing to authorize, the city of Kenosha to issue scrip of this character in aid of railroads, except the provision which was held void in *Foster v. Kenosha*. Every purchaser, therefore, was chargeable with knowlege of the want of authority.

In the case of *Campbell v. The City of Kenosha*, 5 Wall. 194, the supreme court of the United States held some of this scrip valid, upon the 'ground that although the common council, in issuing it, professed to act under the provision of the charter which we have declared void, yet its action might properly be sustained under the provisions of chapter 105, Laws of 1853, which authorized the city to issue its bonds to the amount of $150,000, in aid of this railroad. The amount of bonds authorized by this act being limited, it was free from the objection which made the general provision of the charter void. And that court holds that the action of the city should rather

be referred to the valid statute, under which it might be sustained, than to the invalid one under which it assumed to act. And it comments upon the fact that the attention of this court was not called to this act of 1853, in the case of *Foster v. Kenosha*.

The counsel for the appellant stated on the argument, that this decision of that court was based entirely upon a misapprehension. He said that the entire amount of bonds authorized by this special act had been issued by the city, and were outstanding, wholly independent of this scrip.

That fact, which was doubtless well understood by both parties in the Foster case, sufficiently explains their neglect to call the attention of this court to this statute, and their argument of the case upon the mutual assumption that the validity of the tax there in question must be sustained upon the other general provision of the charter, or not at all. It also explains, doubtless, why the counsel for the city, inasmuch as no reliance had ever been placed upon this special act to sustain this scrip, neglected to bring to the attention of the federal court the fact that the city had exhausted its power under that act, by issuing the full amount of bonds thereby authorized, independent of this scrip.

The counsel for the plaintiff in this case, who is an old resident and able lawyer in the city, and entirely familiar with all the facts, does not, in the printed brief upon which he has submitted the argument, make any claim or suggestion that the authority to issue this scrip can be derived from that act.

Upon these facts, and upon the additional consideration that this act only professes to authorize the issue of corporate bonds, which are certainly securities of a different form, if not of a different character, we do not feel at liberty, notwithstanding the decision of the supreme court of the United States, to attempt to derive any authority from this act to sustain the scrip.

That court also relied on a ratification by the city and the legislature, subsequent to the issue of the scrip. This was based upon a revision of the charter in 1857, in which it was provided that a railroad commissioner should be elected as a city officer, who should have charge of any interest which the city then had or might thereafter have in the railroad, and should thereafter redeem all scrip that had been issued to the railroad company, as it became due. The city acted under this authority, elected the commissioner, and he represented it as a stockholder. If the original defect had been merely the want of legislative consent, it may be that this would constitute a ratification. But such was not the case. The legislature had originally authorized the issue of the scrip, as far as it could do so without fulfilling another duty which we held the constitution imposed on it as a condition to the validity of such authority. It was bound, in authorizing a municipality to contract debts for these extraordinary municipal purposes, to exercise its legislative discretion, and impose some limit upon such power of the corporation, in order to prevent abuses and undue extravagance and oppression. That discretion it has never exercised. The act revising the charter does not profess to cure any defect in the original authority, nor to establish any limitation upon the power of the city under it. It proceeds entirely upon the assumption that the original provision was valid, and in classifying the duties of the city officers in the revision, it merely imposed the railroad duties, and among others that of paying the scrip that had been issued, upon the commissioner.

It is difficult to see how a mere legislative direction that the scrip should be paid, made after it was issued, has any greater efficacy in removing the constitutional objection than a similar direction made before. The original provision under which the issue took place contemplated that the scrip should be paid, and pledged

the faith of the city for its payment, and authorized taxation for the purpose. If it was invalid then, it is not readily seen how a mere repetition of it, after the scrip is issued, changes its effect. True, it may be said, whenever a city has acted under such a general unlimited power, that, although the power was unlimited, the amount of securities which it has issued at any particular time must, in the nature of things, be limited; and that, therefore, when the legislature subsequently directs the payment of securities that have been issued, such direction has, of necessity, a practical limitation, being applicable only to securities which of necessity must be limited in amount.

But the same argument is as applicable to future debts and securities as to past. It is as true that the amount of securities which a corporation can issue in the future, must, in the nature of things, be limited, as it is that the amount which it has issued, at any particular time, must be so. But the answer in either case is, that the constitution did not have reference to the abstract distinction between the finite and the infinite, between the limited and the absolutely illimitable, but intended to impose on the legislature, in granting authority of this kind to municipalities, the duty of exercising a reasonable discretion in limiting and restricting the power so as to prevent abuses. And wherever it appears that this discretion has never been exercised, those practical limitations that exist from necessity, growing out of the finite nature of man, do not answer the purpose nor supply the defect. And a mere general direction by the legislature to pay all debts which a municipal corporation has contracted at any particular time, under a general unlimited power, has not, from the existence of that limitation, of necessity, any more tendency to show an exercise of this legislative discretion than the same direction would have in respect to the payment of future debts to be

contracted under the same power by reason of the same necessary limitation to their amount.

We think, therefore, unless we should overrule the case of *Foster v. Kenosha*, which we have no inclination to do, this scrip must be held void.

[The following explanatory remarks were added to the above opinion after the death of Mr. Justice PAINE:]

DIXON, C. J.  I fully concur in the foregoing decision, and upon grounds which perhaps clearly enough appear in the opinion, but which, to avoid any misapprehension, I desire to state with more particularity and distinctness.  I do not understand Justice PAINE to hold that subsequent legislative ratification is in all cases impossible.  I understand him only as holding that there was no valid or sufficient ratification here, because it appears that the legislative discretion to restrict the power of taxation, of contracting debts, and of loaning the credit of the city, has never been exercised.  The duty imposed upon the legislature by sec. 3, art. 11 of the constitution, has never been performed.  It was not performed at the time the power to contract the indebtedness in question was attempted to be conferred, nor when the supposed legislative ratification took place.  The ratification by the legislature, to have been valid and sufficient, must have been for some ascertained amount or definite sum, so that it would appear that the duty of exercising a reasonable discretion in limiting the power, so as to prevent abuses in assessments and taxation, had been performed. Without this, or without its appearing that the legislature knew the amount of indebtedness already incurred or attempted to be, and ratified in pursuance of such knowledge, it was no valid ratification.  The duty imposed by the constitution was still unperformed, and therefore I think the scrip in question is still void.

The views which I have thus expressed are those of Mr. Justice COLE also.  He understands the opinion of

Mr. Justice PAINE as I do, and concurs in it upon the same grounds.

*By the Court.*—The judgment is reversed, and the cause remanded with directions to enter judgment for the defendant.