MEMPHIS AND CHARLESTON RAILROAD COMPANY *v.* JAMES L. GAINES, Comptroller, and others.

## October Term, 1877.

TAXATION — INJUNCTIVE POWER OF THE CHANCERY COURT. — Where a board of railroad-tax assessors, acting under appointment by the state, was proceeding, under an imperative statute, which left them no discretion, to assess for state, county, and municipal taxation the property of several railroad companies, whose roads severally extended through a number of counties and county towns, and whose charters contained exemptions of the corporate property through some or all of the years for which the assessments were made, it was held that the companies were entitled to a temporary injunction, until the questions involved could be heard and determined, enjoining the assessors from reporting the assessment to the comptroller, and the latter officer from certifying the valuations to the counties and towns through which the roads ran, upon each company giving bond in the penalty of $5,000, conditioned as required by law in injunction cases before judgment.

*Humes & Poston*, for complainant.
*Heiskell*, for the state officers.
*S. P. Walker*, for Memphis and the county of Shelby.
*T. L. Dodd*, for county of Davidson.

THE CHANCELLOR: — On March 24, 1875, the Legislature passed an act, chapter 78 of the Printed Acts, entitled "An act declaring the mode and manner of valuing the property of a railroad company for taxation." The first ten sections provide for the appointment of three railroad-tax assessors; the mode in which they shall assess the property of railroad companies; the revisal of their action by a board of examiners, consisting of state officers; the return of the final valuation to the comptroller of the state, and the notification by him of the clerks of the various counties, and the mayors of incorporated towns, through which the roads may run, of the amount to be taxed in said counties and towns respectively. There are other provisions relating to the collection of the taxes. Section 11 of the act exempts from the provisions of the preceding sections

" each and every railroad company which will accept, as a special amendment to its charter, for a period of ten years from the 1st day of January, 1875," and will pay annually to the treasurer of the state, to be in full of all taxation, one and one-half per cent on the gross receipts, from all sources, of such company. The exemption was coupled with the proviso that the charters of all railroad companies accepting the provisions of the section be so amended that, after the expiration of said ten years, no exemptions of any property of said company shall exist, but such property should be on the same footing as the property of other corporations or individuals. And the charters of all such railroad companies were so amended that, after the lapse of said ten years, every provision of the charters exempting their property from taxation was declared null and void.

Under this act, the Louisville and Nashville Railroad Company accepted the provisions of the eleventh section of the act, amended its charter in accordance therewith, and paid into the treasury of the state one and one-half per cent of its gross receipts. The charter of this company contained no exemptions of property from taxation ; but the company owned, by lease and purchase, other railroads in this state, which did claim exemptions. By the amendment of its charter, in accordance with the eleventh section of the act, the company renounced all claim of exemption for any of its roads or branches, so bought and leased, in the state of Tennessee. Afterwards, the county of Sumner levied a tax for county purposes on the value of the road, in that county, of the Louisville and Nashville Railroad Company, as ascertained by the railroad-tax assessors and board of examiners under the ten first sections of the act of 1875. The company superseded the collection of this levy by petition to the Circuit Court, based on its acceptance of the terms of the eleventh section, and the litigation thus initiated was terminated by a decision of the Supreme Court on February 3, 1877, reported in the Com. Leg. Rep. of March 21,

1877, under the style of *Ellis* v. *Louisville & N. R. R. Co.* The court held, Deaderick, C. J., delivering the opinion, that, under the State Constitution of 1870, which imperatively directs that all property shall be taxed, and taxed according to its value, the eleventh section of the act of 1875 was unconstitutional; that it could not be sustained, so far as the Louisville and Nashville Railroad Company was concerned, "notwithstanding the amendment of the charter of the company, surrendering supposed exemption from taxation after ten years." "The first ten sections of the act," say the court, "do aim at equality and uniformity. But the eleventh section proposes to release the companies, for one and one-half per cent of their gross earnings, from the operation of the equal and uniform taxation provided in the preceding sections, and substitutes unequal taxation, or exemption from all taxation, for the annual payment of a sum to be ascertained, indefinitely uncertain in amount, and dependent upon the amount of their business." * * * "The Legislature may direct the mode of ascertaining the value of property, but it cannot tax it otherwise than according to its value. It may choose what agencies it thinks best, to ascertain the value of property, but the taxes imposed must be equal and uniform. Under section 11, for a consideration, the Legislature has contracted, in effect, not to tax property of railroad companies at all. This cannot be done under our present Constitution."

In view of, and with special reference to, this decision, the Legislature, on March 20, 1877, passed an act to amend the act of 1875. This act, among other things, directs the railroad-tax assessors to assess all railroads in the state, "and where any railroads have not been assessed for taxation under the first ten sections of the act of March 20, 1875, by reason of having accepted and complied with the provisions of the eleventh section of said act, or for any other cause," to assess such railroads for the years 1875 and 1876, and also all railroads in the state for the years 1877

and 1878.   By the ninth section, it is provided that all railroads which accepted and complied with the provisions of the eleventh section of the act of March 20, 1875, "shall be entitled to a credit for the amounts respectively paid by them to the state upon the amounts due by them to the state, under the assessment made, or to be made, under this act and the act of March 20, 1875, for the years 1875, 1876, and 1877; and if the amounts so paid by said companies shall exceed the assessment for said years, the excess shall be refunded by the state to said railroads, with interest."

The railroad-tax assessors having proceeded to assess, under these acts, all the railroads for the years 1875, 1876, 1877, and 1878, several of the railroad companies thus assessed have filed bills in this court to enjoin the assessors from reporting the assessment of the complainants' property to the comptroller, and to enjoin the latter functionary from certifying the valuations to the counties and incorporated towns through which the roads run, and from applying any of the moneys paid in under the acceptance of the eleventh section of the act of 1875 in satisfaction of the new assessments made under the act of 1877.   By consent of the attorney-general of the state, a temporary order was made by me, at chambers, restraining the defendants from doing the acts sought to be enjoined, until the application for an injunction could be formally brought before the court in term.   Afterwards, the restraining order was so modified as to permit the defendants, the railroad-tax assessors, to complete their duties, and to make their report to the comptroller.   The case is now before me, upon the application for an injunction.

The *status* of the several complainants, and the grounds upon which they base their particular application, differ in some respects.   The bill of the Memphis and Charleston Railroad Company may be taken as a fair representative of most of these bills.   That company was chartered on February 2, 1846, and its road runs through the counties of

Shelby, Fayette, Hardeman, and McNairy, and through nine incorporated towns. The thirty-eighth section of its charter is in these words: "The capital stock of said company shall be forever exempt from taxation, and the road, with all its fixtures and appurtenances, including shops, warehouses, and vehicles of transportation, shall be exempt from taxation for the period of twenty years from the completion of the road." The road was completed on March 28, 1857, and the exemption conceded by the foregoing section continued until March 28, 1877. The company, nevertheless, accepted the provisions of the eleventh section of the act of 1875 as an amendment of its charter, and has paid into the treasury of the state one and one-half per cent of its gross earnings for the years 1875 and 1876. The company insists that the eleventh section of the act of 1875 became, by virtue of its acceptance and payment of taxes as aforesaid, a part of its charter, and that the subsequent act of 1877 impairs the obligation of the contract thus created, and is unconstitutional and void. It further insists that, if this be not so, its property was exempt from taxation to March 28, 1877, under its original charter, and that the assessments of this property for the years 1875, 1876, and 1877, by virtue of the act of 1877, were in violation of the contract of exemption, unconstitutional, and void. It also claims that the exemption of its capital stock by the thirty-eighth section of the charter necessarily exempts its property, in which the capital stock is vested, and of which it in reality consists, and, therefore, the assessments in controversy are violative of the obligation of the contract created by that section, unconstitutional, and void. It is likewise claimed that any appropriation of the moneys paid into the treasury of the state, in virtue of the acceptance of the eleventh section of the act of 1875, to the satisfaction of any supposed taxes due to the state under the new assessments, would, if those assessments were invalid for any of the foregoing causes, be wrongful, and

contrary to the spirit of the provisions of the ninth section of the act of 1877, as before quoted. A further ground upon which the application for an injunction is sought to be rested is, that if the comptroller is permitted to certify the assessments to the various counties and incorporated towns through which the complainant's road runs, it would lead to a multiplicity of suits, which would be vexatious and unnecessary.

The application under consideration has been argued by the attorney-general on behalf of the state, by counsel on behalf of the county of Shelby and city of Memphis, by counsel for the county of Davidson, and by counsel for the railroad companies. The burden of the argument has been upon the merits of the questions raised by the bill, involving grave constitutional points. Ordinarily, as I have had occasion to say, the same principle must regulate both the granting and the dissolution of injunctions, except in those cases otherwise controlled by statute; and that, upon applications for or to dissolve an injunction, it is neither necessary nor proper for the court to undertake to decide the case upon its merits, for there is no mode, under our system, of correcting any errors which may be then committed in adjudicating rights. If the court can see that there is a substantial question to be determined, its duty is to preserve the existing rights and *status* of the parties until the question can be regularly disposed of by a hearing on the merits. *Owen* v. *Brien*, 2 Tenn. Ch. 297. Upon the preliminary application for an injunction, all that the judge should, as a general rule, require is a case of probable right, and probable danger to that right without the interposition of the court, and his discretion should then be regulated by the balance of inconvenience or injury to the one party or the other. *Flippin* v. *Knaffle*, 2 Tenn. Ch. 238. These principles apply to the litigation between private individuals. And, of course, in suits involving the public interest, other principles come also into play. There must be a clear case

for equitable relief before the court will sustain an injunction against the collection of a tax which is part of the revenue of the state, even if the rule be less rigid where the tax is levied by counties and incorporated towns. *State Railroad-Tax Cases*, 92 U. S. 615. But it has been conceded by the Supreme Court of the United States, as well as by the state courts, that even in such cases it will be a sufficient ground, to entitle a party to come into equity, that the enforcement of the tax would lead to a multiplicity of suits, or produce irreparable injury, or, when the property is real estate, throw a cloud upon the title of the complainant, before the aid of the court could be invoked. *Hannewinkle* v. *Georgetown*, 15 Wall. 548 ; *Heywood* v. *Buffalo*, 14 N. Y. 534. And it seems that a violation of the Constitution, state or national, either in the statute, or in its administration by a board of assessors, would also authorize the interposition of a court of equity. *State Railroad-Tax Cases*, 92 U. S. 615 ; *Foster* v. *Kenosha*, 12 Wis. 616.

With these principles before us, we come to the consideration of the several cases made by these bills. If the equity of the complainants rested solely upon their acceptance of the terms of the eleventh section of the act of 1875, and the violation, by the act of 1877, of the supposed contract thereby created, I should have grave doubts whether I was not concluded by the decision of the Supreme Court in *Ellis* v. *Louisville and Nashville Railroad Company*. The court, in that case, treated the act of 1875 as a purely revenue law, and expressly held that the Legislature could not, at any rate by such an act, agree, for a valuable consideration, to exempt railroad property from the equal and uniform taxation required by the State Constitution. But the real equity of the bill, if the invalidity of the eleventh section of the act of 1875 be conceded, consists in the exemption from taxation for twenty years secured by the thirty-eighth section of the charter, and the prevention of a multiplicity of suits ; and this, whether that exemption is perpetually operative

under the clause relating to the capital stock, or terminates, so far as the property of the company is concerned, with the expiration of the twenty years from the completion of the road.

If we adopt the most unfavorable construction, for the company, of the act of 1875, there is a clear exemption of its capital stock and property from all taxation up to March 28, 1877, by virtue of the provision of the charter of the company, granted long before the adoption of the Constitution of 1870. Such an exemption, it has been held by our Supreme Court, was within the competency of the Legislature, under the Constitution of 1834. *The State* v. *Farrington* (MS. opinion). And all the authorities agree that a subsequent act of the Legislature, violative of such an exemption, would be unconstitutional. Here, then, is a clear equity, in favor of the company, to be protected from the collection of taxes imposed by an assessment of exempt property, in plain violation of a valid contract, and, therefore, unconstitutional. Nay, more ; the prevention of a multiplicity of suits, and, it may be, the creation of a cloud upon the title of the complainant's realty by forced sales, are clearly involved. Unless, therefore, the court is constrained by some positive prohibition of law to stay its hand, its obvious duty is to interpose, by its injunctive process, for the protection of the company.

Such a prohibition, it is said, is found in the act of March 20, 1873, ch. 44, sec. 1. But that act is confined to cases " in which an officer, charged by law with the collection of revenue due the state," is instituting proceedings, or taking steps for its collection. The very object of these bills is to prevent the perfecting of the assessments, and the coming of such assessments to the hands of " an officer charged by law with the collection of revenue." The bills were filed against the railroad-tax assessors, to enjoin them from completing the assessments which would be unconstitutional or illegal, and against the comptroller, to enjoin him from re-

ceiving the assessments and transmitting to the counties and incorporated towns the necessary certificates to enable them to collect their proportion of the taxes. And although the temporary restraining order was so modified as to permit the assessors to complete their work and report their assessments to the comptroller, yet this was done at the instance and for the benefit of the state, to save expense, and, as the act of the court, cannot be allowed to prejudice the complainants. The act of 1870 imperatively directed the assessors to make assessments, for the years 1875 and 1876, of the property of all railroad companies not pre-viously assessed under the act of 1875, and of all railroad companies in the state for the years 1877 and 1878. The railroad-tax assessors had no discretion in the matter, and could not determine whether the companies, or any of them, were entitled to exemption for any of those years. The board of examiners had no discretion in the premises, nor had the comptroller. It is an obvious case for the inter-position of the courts, at some stage of the business, to correct the involuntary violations of the Constitution by the assessors, if such violations have occurred. And no better time can be found for this interposition than the present, when the wrong is yet *in fieri*, and when, by the interposi-tion, a multiplicity of suits and great and unnecessary ex-pense may be prevented. Besides, the payment to the state of the one and one-half per cent of gross earnings, by those roads which accepted the terms of the eleventh sec-tion of the act of 1875, will largely exceed the share of the state under the new assessments, up to and inclusive of the present year, and one object of these bills is to ascertain and receive this excess. And, as we have seen, the act of 1873, ch. 44, sec. 1, has no application to the taxes due counties and towns.

I am of opinion, therefore, in view of the magnitude of the interests involved, the gravity of the questions, and the multiplicity of suits which would otherwise take place, that

the Memphis and Charleston Railroad Company, and other railroad companies complainant in like situation, are entitled to the injunction as prayed, upon giving bond, with good security, in the penalty of $5,000, conditioned as required by law in injunction cases before judgment.

It may be that some of these companies did not accept the terms of the eleventh section of the act of 1875, and are not entitled to any exemptions, by charter, for one or more of the years over which the assessments extend. If so, the injunction ought not to prevent the carrying-out of the provisions of the law for those years. There may, also, be other companies not falling fully within the principles settled, as to whom only a modified injunction should be granted. Either party may, therefore, present specially the bill in any case, with suggestions as to the proposed modification, for action by the court.