PERRIN, Appellant, vs. THE CITY OF NEW LONDON, Respondent.

*November 23 — December 14, 1886.*

*Municipal corporations: Aid to railroads: Constitutional law: Village charter construed.*

1. Sec. 1, ch. 93, P. & L. Laws of 1867, authorizing any town or incorporated city or village in any county through which the G. B. & L. P. railway should run to issue its bonds in aid of such railway. is *held* to apply to cities and villages incorporated after the passage

of the act and while the railway was in process of construction. [Whether said act was inoperative, so far as it relates to incorporated villages and cities, because it disregards the requirements of sec. 3, art. XI, Const., not determined. *Oleson v. G. B. & L. P. R. Co.* 36 Wis. 383, limited.]

2. The charter of the village of New London (ch. 485, P. & L. Laws of 1870), forbidding it to incur any debt or liability in any year greater than the amount of the tax allowed by the charter to be raised in such year, and conferring no authority to raise money by taxation to pay bonds issued in aid of a railway, took that village out of the purview of ch. 93, P. & L. Laws of 1867, and it had no authority in 1872 to issue its bonds in aid of the railway therein mentioned.

3. A provision of a village charter authorizing the trustees, when in their opinion the interests of the village required the expenditure of money " for an extraordinary or special purpose," to submit the question of raising money therefor by taxation to a vote of the electors, refers only to strictly *municipal purposes*, and does not authorize the raising of money to aid in the construction of a railway.

APPEAL from the Circuit Court for *Waupaca* County. This action was brought to recover the sums due on eight bonds for $100 each, and interest, executed by the village of New London to the treasurer of the Green Bay & Lake Pepin Railway Company, or bearer, dated March 1, 1872, and owned by the plaintiff. Such village was incorporated and organized in 1868 under and by virtue of ch. 504, P. & L. Laws of that year. It became an incorporated city under ch. 162, Laws of 1877. The city, the defendant in this action, succeeded to all legal liabilities of the village. The bonds in suit were issued pursuant to ch. 93, P. & L. Laws of 1867, entitled "An act to authorize counties and towns through which the Green Bay & Lake Pepin Railway passes, to aid in its construction." All the requirements of that statute were fully complied with before such bonds were issued. They are due and unpaid.

The foregoing is a brief statement of the case made by the complaint. The defendant city interposed a general

demurrer thereto, and the plaintiff appeals from an order sustaining such demurrer.

*Gabe Bouck,* for the appellant.

For the respondent there was a brief by *Charles W. Felker* and *J. W. Meiklejohn,* and oral argument by *Mr. Felker.*

LYON, J.   1.  Because the village of New London, which issued the bonds in suit, was not incorporated and organized when ch. 93, P. & L. Laws of 1867, under which such bonds were issued, was enacted, counsel for the defendant city maintains that the act of 1867 was not applicable to such village and conferred no authority upon it to issue the bonds.

The language of the statute is:  "It shall be lawful for any county, through any portion of which any part of the Green Bay & Lake Pepin Railway shall run, or any town or incorporated city or village in such county, to issue and deliver to said company its bonds," etc.  (Section 1.)   We find in the act no language which restricts the operation thereof to such incorporated cities and villages as were in existence when the act was passed.   We incline to the opinion that cities and villages not then incorporated, but which came into existence while the railway named therein was in process of construction, are within the purview of the act, unless there is some subsequent statutory provision which renders the act inapplicable to such municipalities.

2.  It is claimed that the revised charter of the village of New London (P. & L. Laws of 1870, ch. 485) contained provisions and limitations which took that village out of the purview of the act of 1867, and deprived it of authority to issue its bonds under that act.

To consider the proposition intelligently it is necessary to quote some of the provisions of the revised charter of the village.

Sec. 2, subch. 7, p. 1246, reads as follows: " Said village shall have no power, except when specially authorized thereto by law, to borrow money, nor shall it be liable to pay any money borrowed on its own account or advanced in its behalf by its officers or any person, nor shall any of its money or property be applied to any such purposes, nor shall said village incur any debt or liability in any year greater than the amount of tax allowed by this act to be raised in said village in the year in which such debt or liability was incurred."

Sec. 1, subch. 8, p. 1248, contains these provisions: " For the discharge of any legal debt of the village or expenditure authorized by the board of trustees under any of the provisions of this act or of any ordinances of this village, or to defray the current expenses thereof, the board of trustees shall have the power, by ordinance or resolution, (1) to annually levy and collect a tax on all real and personal property in the village made taxable by the laws of the state, to defray the contingent and other general expenses of the village and pay the interest annually on the bonded indebtedness thereof, which tax shall constitute the general fund." The section also confers upon the board of trustees limited power to levy a ward tax, school and poll taxes, and taxes for the support of the poor.

In addition to the above provisions, sec. 7, subch. 7, authorizes the board of trustees, when in their opinion the interests of the village require the expenditure of money for an extraordinary or special purpose, which in their opinion cannot be paid from any funds in the village treasury, to submit the question of raising money therefor by taxation to a vote of the electors. The steps to be taken preliminary to such submission, and the procedure when the vote is taken, are prescribed in the section. Sec. 8 provides for canvassing the votes; and, if a majority of the electors vote to raise the money, it further provides that

"it shall be the duty of the board of trustees to cause the said sum or sums of money to be assessed, levied, and raised in and by the next assessment roll, at the time the next annual tax is levied and raised."

We think the "extraordinary or special purpose" of sec. 7 means only a strictly municipal purpose, and does not authorize the raising of money by taxation in aid of the construction of a railroad through the county in which the village is situated. For example, in case the waters of Wolf river, contiguous to the village, should make inroads upon the village, the electors might vote a tax to build break-waters or other protection. This would be a municipal purpose proper, yet such power does not seem to be conferred by the charter upon the board of trustees. Probably matters of proposed expenditure within the jurisdiction of the board of trustees might also have been submitted to a vote of the electors.

After a very careful consideration of the village charter, we are led to the following conclusions: (1) It authorized the board of trustees, in many cases, to incur debts or liabilities without a vote of the electors, and in other cases pursuant to a vote of the electors, but only for purposes strictly municipal. Many, perhaps the most, of these purposes are enumerated in sec. 7, subch. 6, of the charter of 1870 (pages 1240–1245), prescribing the powers of the board of trustees. (2) No such debt or liability could lawfully be incurred in any year, for an amount greater than the charter allowed the village to raise by taxation in that year. (3) In the year 1872, when the bonds in suit were issued, the charter conferred no authority upon the village or its board of trustees to raise money by taxation to pay such bonds in that or any other year. Hence the village was prohibited to issue such bonds by the terms of sec. 2, subch. 7, of the charter.

If we turn to ch. 93, P. & L. Laws of 1867, under which

the bonds in suit were issued, we find no provision therein for levying a tax to pay the principal of the bonds, but only the annual interest.   Sec. 6.   So, were the act of 1867 read with the charter and considered a part of it, the authority to levy a ·tax to pay the principal of the bonds would still be wanting, and the prohibition of the charter would still remain.

The foregoing considerations lead to the conclusion that the charter of the village of New London took that municipality out of the purview of the act of 1867, that such vil-. lage had no lawful authority to issue the bonds in suit, and hence that payment thereof cannot be enforced against the city of New London, upon which is cast the burden of the lawful liabilities of such village.

3. The conclusion just stated renders it unnecessary to determine the question, which was very ably argued by the learned counsel for both parties, whether ch. 93, P. & L. Laws of 1867, so far as it relates to cities and villages, is inoperative because it disregards the requirements of sec. 3, art. XI, of the constitution.   Ch. 93 was held to be a valid law in *Oleson v. G. B. & L. P R. Co.* 36 Wis. 383.   Although general language to that effect is used in the opinion, yet the bonds there in controversy were issued by a town,` and such language must be understood as applying only to such a case.   It is not there decided that ch. 93 is a valid enactment so far as it affects incorporated cities and villages.   The cases of *Foster v. Kenosha,* 12 Wis. 616, and *Fish v. Kenosha,* 26 Wis. 23, in which the effect of sec. 3, art. XI, upon certain provisions in the charter of the city of Kenosha was determined, have never been overruled or shaken.   We do not determine whether the judgments in those cases would be applicable to a liability incurred by a city or village under ch. 93, P. & L. Laws of 1867.

It may be observed, in conclusion, that the portion of sec. 3, art. XI, which required the legislature to restrict the

power of cities and villages to contract debts, etc., was superseded by a constitutional restriction in that behalf, contained in an amendment to sec. 3, adopted in 1874. R. S., p. 37. So much time has elapsed since this amendment was adopted, it is not probable that hereafter questions of the effect of the original section upon acts of the legislature will often arise. Indeed, the general statutes of the state, and at least some of the special laws which authorize cities and villages to aid in the constructing of railroads, contain proper and effectual limitations upon such power.

*By the Court.*— The order of the circuit court sustaining the demurrer to the complaint is affirmed.