## JOHN VS. LARSON.

(1, 2) *Notice of defendant's rights to land.*   (3) *Assignee restricted to assignor's rights.*

1. M. mortgaged to W., land of which defendant was in possession, as security for the payment to W. of his fees as attorney-at-law in an action which he was to bring for M. against defendant to recover possession of the land. *Held*, that these facts conclusively charge W. with notice of any rights which defendant had in the land.

2. On foreclosure of said mortgage, the land was sold to plaintiff, defendant being present claiming to own the land, and forbidding the sale, with the knowledge of plaintiff. *Held*, that plaintiff took subject to defendant's rights.

3. This court having held that the agreement between M. and defendant, by which the latter obtained possession of the land, was champertous and void, but that, after the same was executed, it would not aid M. (who was *in pari delicto* with defendant) to regain possession (19 Wis., 463), it must now refuse similar aid to the plaintiff, who has merely succeeded to M.'s rights, with notice of the defect in his title.

John vs. Larson.

APPEAL from the Circuit Court for *Winnebago* County.

Ejectment, for the east half of the west half of a quarter section of land. Complaint in the usual form. Answer, 1. A general denial. 2. That on the 16th of January, 1863, one Miller executed and delivered to one Weisbrod, a mortgage on the west half of said quarter section, to secure payment of his promissory note to said Weisbrod, of same date, for $335 ; that defendant then was, and has ever since been, in possession of the east half of said mortgaged premises (viz: of the premises described in the complaint), and that he has made permanent improvements thereon, in good faith, to the value of $1,000; that the consideration of said note and mortgage, or a part thereof, consisted of services to be rendered by the mortgagee, or the firm of which he was a member, in an action to be brought by Miller against the defendant for the same cause of action set forth in the complaint herein; that on or about April 16, 1863, said action by Miller against this defendant was commenced in said court, and was tried at the September term thereof, 1864, and judgment was therein entered for the defendant; that the mortgage aforesaid was foreclosed by an action in said court, and a judgment of foreclosure and sale rendered therein at the March term, 1868; that this defendant was not made a party to said foreclosure action ; that the sheriff of said county advertised the whole of said west half of said quarter section of land for sale, under said judgment; that at the time and place of such sale, this defendant forbade the sheriff selling or offering the premises described in the complaint herein, and notified all persons then and there present, and especially the plaintiff herein, of his possession and claim to said premises; that this defendant then and there offered to bid and pay the whole amount of said judgment and costs and expenses of sale, for the *west* half of said west half of said quarter section, but the sheriff, by the direction of said Weisbrod, refused to offer the same for sale, and offered first for sale the premises described in the complaint herein; that plaintiff bid therefor

the whole amount of said judgment, costs and expenses, and the premises were struck off to him; that plaintiff claims said premises under and by virtue of this sale and of a sheriff's deed executed to him in pursuance thereof; and that said purchase was made by plaintiff at the request, with the money, and for the use, of said Miller.

As a third defense, the defendant sets up the facts, fully recited in *Miller v. Larson,* 19 Wis., 463, as to a certain contract between himself and Miller (fully executed on defendant's part), under which he had taken and retained possession of the land in dispute; and he alleges that the plaintiff herein, at the time of the purchase at the foreclosure sale above mentioned, had full notice of his rights and equities under said contract and possession.

On the trial, plaintiff put in evidence a sheriff's deed to him of the land in question, under a sale upon foreclosure of a mortgage in a suit wherein Agnes Whittemore was plaintiff and said Miller and wife were defendants. There was nothing in the deed to show that this was the mortgage executed to Weisbrod, above mentioned; but the language of the court, recited in another part of the bill of exceptions, clearly assumes that it was the same mortgage. Plaintiff also proved the value of the use and occupation of the premises. The court refused to receive any evidence under the second and third defenses, unless coupled with evidence that the purchase upon the foreclosure sale to plaintiff was made with the money and for the use and benefit of Miller; and no evidence of that kind being offered, the jury, under the direction of the court, found a verdict for the plaintiff, and judgment was entered thereon. The defandant appealed from the judgment.

*Geo. W. Burnell* (with *Geo. Gary,* of counsel), for appellant, argued that defendant's possession at the time of the execution of the Weisbrod mortgage, was notice to the mortgagee and to all the world of his rights (7 Wis., 293; 14 id., 468; 18 id., 510), and the judgment in *Miller v. Larson,* 19 Wis., 463, is

conclusive as against the plaintiff (a privy in estate with Miller) that Miller had no mortgageable interest in the land which he could assert at that time (11 Ohio, 478); that defendant's rights were not affected by the foreclosure suit, to which he was not a party (7 Wis., 263; 11 id., 454; 10 id., 303); that even if defendant's possession was not notice of his rights, the judgment in *Miller v. Larson* had the effect *at least* of placing *Larson*, at the time of the foreclosure sale, in the position of a purchaser, subsequent to the mortgage, of a part of the premises, and as such he was entitled to have that portion of the premises still owned by Miller first sold (14 Wis., 559; 15 id., 314); that the plaintiff herein, by thrusting himself in to purchase this litigation against the protest of the defendant, with full notice of the facts, was as obnoxious to the charge of champerty as Miller himself (2 Johns. Cas., 58, 417; 6 Mass., 421; 7 id., 78; 11 id., 550; 2 Paige, 289; 2 Caines' Cas., 147); and that the facts set up in the third defense showed a good defense, because a champertous agreement executed is as valid as any other (19 Wis., 467; 4 Kent's Com., *448), and a purchaser *mala fide* acquires no more rights than his grantor had.

*Felker & Weisbrod*, for respondent, argued that nothing was shown at the trial to defeat plaintiff's title under the sheriff's deed in the suit of Agnes Whittemore against Miller and wife, since there was no averment in the answer, and no proof offered to connect Agnes Whittemore in any way with the defense set up in the answer.

CO LE, J.   Some question is made as to the origin of plaintiff's title.   It is said by his counsel that the sheriff's deed under which he claims was executed in a foreclosure suit wherein Agnes Whittemore was plaintiff and Miller and wife were defendants, and that there is no averment or offer of proof, which in any manner connected the matter set forth in the answer with the Whittemore mortgage.   We presume the fact was that Mrs. Whittemore was the assignee of the Weisbrod mortgage, for

the answer states that the plaintiff purchased at the foreclosure sale made under that mortgage, and claims the premises by virtue of that sale, and of the sheriff's deed made in pursuance thereof. It is very obvious that the cause was tried upon the assumption on both sides that the plaintiff claimed the premises under the foreclosure and sale upon the Weisbrod mortgage, and that this was the foundation of his title. We shall therefore consider the case in that light. Do, then, the matters set up in the answer constitute a defense to the action? The plaintiff objected to any evidence under the answer, for the reason that the facts therein set forth did not constitute any defense; and the court held that all evidence must be excluded, unless the defendant was able to prove that the purchase under the foreclosure sale by the plaintiff was at the request and for the use and benefit of Miller, the mortgagor.

According to our view, it is quite immaterial whether the plaintiff purchased at the foreclosure sale for the benefit of Miller or not, for he was affected with notice of the defendant's rights, whatever they were. For, in the first place, it appears from the answer—which for the purposes of this case we must assume to be true—that when the Weisbrod mortgage was executed by Miller, the defendant was in the actual possession of the premises in controversy, and had been since 1858, and had made valuable improvements upon them. Upon principles perfectly familiar and well settled, Weisbrod was then chargeable with notice of this possession, and was bound to ascertain by what right the defendant held and occupied the premises. The correctness of this proposition is too obvious to require the citation of authorities in its support.

But, besides the presumption of notice arising from possession, there is another circumstance which shows conclusively that the mortgagee was apprised of the defendant's claim to the premises, and that is this: The mortgage was given to Weisbrod for services to be rendered by him as attorney in bringing an action in the name of Miller against the defendant for the recovery of

these premises. What circumstance can be imagined better calculated to charge Weisbrod with actual notice of the adverse claim of the defendant, than to be employed to prosecute a suit to test the validity of this very claim? He must therefore be held to be chargeable with notice of the most conclusive character, of the rights of the defendant in the property when the mortgage was executed. And at the time of sale, it aso appears, the defendant was present, and forbade the sheriff selling the land, and notified all persons, especially the plaintiff, of his claim to and possession of the premises. The plaintiff consequently purchased with full knowledge of the defendant's rights.

What, then, are those rights under the agreement set up in the answer? We had occasion to consider that question in the case of *Miller v. Larson*, reported in 19 Wis. R., 463. That was an action brought by Miller against this same defendant to recover possession of the premises in controversy. To defeat a recovery, the defendant set up and relied upon the agreement contained in the third defense in the present answer. And while this agreement was there held to be champertous in its character, still it was determined that it had been so far executed that a court of justice would not interfere to deprive the defendant of the possession of the property acquired under it. The contract, though unlawful, yet having been executed, and the parties to it being *in pari delicto*, the law would leave them as they were, affording a remedy to neither. And the question is, Will the law be any more active in aiding a party to obtain the possession who stands in Miller's shoes, who has merely succeeded to his rights, and who has no superior equities in the property? If the court will aid a party thus situated, upon what principle does it proceed? For it is manifest that the plaintiff is a privy in estate to Miller, and is affected with notice of the defect in his title. Ordinarily the rights of the mortgagee in the property are no greater nor more perfect than those of the mortgagor. In the language of a learned writer, " The

rule which limits the right of the buyer by that of the seller, and subjects the title of the one to every drawback or defect which attached to that of the other, is the general rule, both of law and of reason." Note to *Basset v. Nosworthy*, 2 Leading Cases in Equity, p. 80. What is there in the circumstances of this case which makes it an exception to this general rule? We really know of nothing, and no satisfactory reason has been given, why the plaintiff has a stronger claim to deprive the defendant of the possession than the mortgagor to whose rights he has succeeded.

It is indeed suggested in the brief of plaintiff's counsel, that while Miller could not recover the property from the defendant on account of his participation in the champertous agreement, yet this was a personal disability, which did not taint the mortgage, nor affect the purchaser at the foreclosure sale. If this were so, then it is obvious that the policy of the law which condemns champerty might be easily avoided. For, as remarked by the defendant's counsel, A. has only to make a champertous contract with B., and the latter having fully performed and A. reaped the full benefit of the agreement, he may then assign to C., who can strip B. of all that he has acquired by his labor and money. In this way the assignee would escape the full consequences which the law denounces against the unlawful agreement. Now Miller had no rights in these premises which the court would enforce; and the plaintiff, who is affected with notice, stands in the same situation. The facts which constituted a good and valid defense against the party under whom he claims, are equally conclusive against him.

It follows from these views that the judgment of the circuit court must be reversed, and a new trial ordered.

*By the Court.*—So ordered.