MILLS VS. CHARLETON, County Treasurer, and others.

*Constitutional law. Injunction. Taxes, re-assessment and re-levy of.*

1. Chap. 316, P. & L. Laws of 1869, provides for the re-assessment and re-levy of certain taxes and assessments to pay for certain pieces of Nicholson pavement previously laid in the city of Madison, or for any other pavement already laid down therein without authority of law. It then authorizes the municipal authorities of said city *thereafter* to order the streets thereof, or any portion of them, to be paved with the Nicholson or any other kind of pavement, whether

patented or not, and either to purchase the patent for the city, or let the work to the lowest bidder in accordance with the charter, upon such terms, conditions and ˙ restrictions as the common council may adopt in reference to such patent. *Held*, that the act does not " embrace more than one subject," within the meaning of the prohibition in sec. 18, art. iv. of the constitution of this state.

2. The title of said act is, " An act to authorize the city of Madison to re-assess and collect certain taxes and assessments." *Held*, that the act is not invalid on the ground that its subject is not " expressed in the title " as required by said section of the constitution.

3. An act of the legislature should not be adjudged invalid except upon clear and unmistakable grounds; and the title of a private or local act (in which great conciseness is usually observed) should be liberally construed; and the act should not be declared void merely because such title does not express the subject as *fully* and *unequivocally* as possible.

4. The title in question may be fairly understood to mean, " An act to authorize the city of Madison *to re-assess* certain taxes and assessments, and *to collect* certain taxes and assessments;" and so understood, it expresses sufficiently the whole subject of the act.

5. The former decision of this court re-affirmed, as to the power of the legislature to authorize the re-assessment and re-levy of taxes or special assessments, where the same as first assessed were void for some irregularity in the proceedings, or some want of power in the local authorities.

6. *Hasbrouck v. Milwaukee* (13 Wis., 37,) distinguished, and the power of the legislature to give validity to a void contract between a municipal corporation and a private person, or to direct a subscription by such corporation to a railroad or other private corporation, without the assent of the municipality, denied.

7. Whether the legislature might impose upon the inhabitants of a municipality a tax *for a strictly public municipal purpose* without their concurrence or that of the municipal authorities, it was not necessary to decide in this case.

8. It is a general rule that a statute which operates to annul or set aside the final judgment of a court of competent jurisdiction, and to disturb or defeat rights thus vested, is void; and the rule is without exception in any matter of mere *private* right.

9. Even where the matter in controversy concerns the *public*, the legislature has no power to open or set aside *the judgment itself*.

10. But the re-assessment of a tax under a new grant of authority is not a re-opening of the judgment by which the former assessment was declared invalid and proceedings thereunder restrained.

11. Where a special assessment upon city lots for the improvement of the adjoining street has by mistake been made too large, but the excess is clearly ascertainable by computation, the collection of such excess will be restrained only upon condition that the amount properly due is paid.   The principle that he who asks equity, must do equity, applies to such assessments, when made by legal authority, as well as to any other taxes authorized by law.

APPEAL from the Circuit Court for *Dane* County.

This action was brought to perpetually restrain the sale of certain lots in the city of Madison for certain special assessments to pay for a *Nicholson* pavement on and along the same.

In an action brought by this plaintiff for that purpose, and decided simultaneously with the case of *Dean v. Charleton*, reported in 23 Wis., p. 590, the collection of the original assessment on the same premises had been enjoined by judgment of the circuit court of Dane county, upon the ground that it was made without authority of law.

A re-assessment and re-levy for the same improvement was made by the common council of the city of Madison, under and in pursuance of chapter 316, P. & L. Laws of 1869; and, the special taxes so re-assessed and re-levied having been returned to the county treasurer as unpaid, the lots were by him advertised to be sold therefor; to restrain which sale this action was brought.

The issues were tried by the court without a jury, upon the testimony embodied in the bill of exceptions in the case of *Dean v. Charleton,* and the court found the facts in respect to such former action, and nearly all of the other facts stated, to be substantially as alleged in the complaint; and further found that, in extending the tax, the city clerk had made a mistake, and extended against the forty-seven feet front owned by the plaintiff at the time of the re-assessment, the whole amount assessed against the sixty-nine feet owned by him when the improvement was made, and such mistake ran through all the subsequent proceedings; and, as conclusions of law, found that "said act of the legislature of Wisconsin, chapter 316, Laws of

1869, is unconstitutional and void; that all proceedings there-under in question, set out in the pleadings, were without au-thority of law, and illegal and void; that said pretended taxes were illegal and void; and that the plaintiff was entitled to judgment and decree of the court, as prayed in his complaint." A judgment was thereupon ordered and entered, perpetually restraining the defendants from all further proceedings, and set-ting aside and declaring void the taxes and assessments stated in said complaint, and for costs against all the defendants. The defendants all appealed.

*H. S. Orton* and *S. U. Pinney*, for appellants:

1. Under the decisions of this court, the power of a legisla-ture to pass an act authorizing a re-assessment, even after a judgment setting aside a former assessment for the same im-provement as having been made without authority of law, can-not be doubted. *Blount v. Janesville* (unreported), and cases cited. 2. Chapter 316, P. & L. Laws of 1869, entitled "an act to authorize the city of Madison to re-assess and collect certain taxes and assessments" is such an act, and it is constitutional and valid. It embraces but one subject, within the meaning of sec. 18, art. IV. of the constitution, to wit: the levying of as-sessments and taxes to pay for *Nicholson* pavement in Madison. Its having reference to the use of the pavement in the future as well as the past, makes it none the less an act embracing but *one subject*, although more than one *object* or *purpose* may be ac-complished by it. The constitutional provision should be con-strued liberally. A strict construction will embarrass legisla-tion, and is unnecessary to the accomplishment of the beneficial purposes for which it was adopted. Cooley on Const. Lim., 146, and cases there cited. *Supervisors v. People*, 25 Ill., 181. It is enough if the subject is expressed in even a very general way, if it be enough to invite attention; and the title of this act is sufficiently attractive and definite. It is enough if the act deals with one principal subject, and all its provisions are sub-sidiary or incidental thereto. If a private or local act combines

one subject of a general nature with one of a purely local character, and the latter is expressed in its title, both provisions will be valid. *People v. McCann*, 16 N. Y., 58. The provisions of this act conferring power upon the city to levy assessments for pavements in the future, may be considered as amendatory of the city charter, and therefore of a general nature. 3. Even though, by mistake a sum was assessed against one parcel in excess of what was justly due, the plaintiff cannot have relief in equity without tendering the amount found to be actually and equitably due. That amount is just forty-seven sixty-ninths of the sum in fact charged against it. As to *taxes* this principle is well established, and the same reasoning applies to *assessments*. 4. The language of chap. 52, Laws of 1870, amending chap. 132, Laws of 1868, is broad enough to have included this assessment, if passed before the assessment was laid. This case is within the equity of that statute, and the statute having become operative before the trial in the court below, should be applied to it. The plaintiff has been largely benefited by the improvement, and ought, equitably, to pay the assessment, even though it may, in strictness of law, be void. Therefore, its collection ought not to be enjoined. Courts of equity interfere only to prevent injustice. *Stokes v. Knarr*, 11 Wis., 389.

*Smith & Lamb*, for respondents:

1. The act of 1869, under which this re-assessment was made, is a private and local law, and embraces more than one subject, and it is therefore unconstitutional. The object of the constitutional provision was to prevent the uniting of various subjects having no necessary or natural connection with one another, in one bill. 5 N. Y., 285–293; *Durkee v. City of Janesville*, 26 Wis., 697. The bill is local, inasmuch as it relates only to the city of Madison. It is published as a private and local law. It does not purport to be an amendment of any charter, and its provisions are private and local in every sense of the word. *People v. Hills*, 35 N. Y., 449. It embraces two subjects

having no necessary or natural connection with each other, viz: 1st, the re-assessment of certain taxes; and 2nd, the adoption and ordering to be paved with *Nicholson* or any other pavement, and purchase of the patent. An act joining two subjects, one public and one private, is as much a violation of the constitutional provision as if both were private. *People v. O'Brien*, 38 N. Y., 193; *People v. Supervisors*, 43 N.Y., 10; *Gaskin v. Meek*, 42 N. Y., 186; *People v. Denahy*, 20 Mich., 349. The title of this act does not express its *subject* or *object.* These terms are used by the authorities as being synonymous. Potter's Dwarris, 104. 2. The original tax having been levied without authority, no subsequent legislation can make it a legal demand. *Hart v. Henderson*, 17 Mich., 218; Cooley on Const. Law, 218. The decisions of this court go no further than to sanction laws authorizing a re-assessment when the original assessment was within the power of the authorities, but the proceedings in laying it were irregular or defective. The terms, " any other cause," as used in the act of 1870, authorizing a re-assessment where a tax has been declared void in consequence of irregularities or omissions to comply with the forms of law, *or for any other cause*, must be construed to mean any similar cause, not any cause whatever. *McHugh v. Timlin*, 20 Wis., 487; *Bevitt v. Crandall*, 19 id., 581; *Rex v. Hall*, 1 Barn. & Cress., 237; *The King v. McKay*, 5 id., 644; *Sandiman v. Bretch*, 7 id., 96; 6 A. & E., 279; Potter's Dwarris, 281–292; Sedgwick on Stat. and Con. Law, 423. Our constitution restricts and limits the legislative power of taxation. *Soens v. Racine*, 10 Wis., 271; *Brodhead v. Milwaukee*, 19 id., 624. The legislature has no power whatever over the subject of local taxation in cities and incorporated villages, except to restrict their power. Const. art. XI, sec. 3. *Foster v. Kenosha*, 12 Wis., 616. It has no power to endorse and ratify the illegal and unauthorized acts of local authorities.

Dixon, C. J. The difficulty in the mind of the court is not that the act in question (ch. 316, Private and Local Laws of

1869) embraces more that one subject, but whether the subject is properly expressed in the title as required by the constitution, art. IV., sec. 18. The title of the act is: " An act to authorize the city of Madison to re-assess and collect certain taxes and assessments." The objection that the act embraces more than one subject is, that after providing for the re-assessment and re-levy of certain taxes and assessments for the pavement known as the "Nicholson pavement," or any other pavement already laid down without authority of law, it proceeds also to authorize the municipal authorities to adopt and order the streets of the city or any portion thereof to be paved with the same or any other kind of pavement, whether patented or not, and either to purchase the patent for such city or to let the work to the lowest bidder therefor, in accordance with the provisions of the charter, upon such terms, conditions and restrictions as the common council may adopt in reference to such patent. The act purports not only to authorize the re-assessment and re-levy of taxes and assessments for any patented pavement *already* laid down, and to legalize and give effect to such *past* proceedings, but also to authorize the adoption and use of any patented pavement *in the future*, and to legalize and make valid *future* taxes and assessments for that purpose. It is this intended operation of the act, *past* and *future*, which is said to make it double, or to create two subjects, or, to state the position more accurately, it is said that the authority to purchase the patent for future works was wholly foreign to the subject of legalizing past transactions, and so the act contains two distinct subjects. If it be competent for the legislature, by one act, or under the title of the act as it is, to provide for both past and future assessments for the purposes specified, then it clearly seems to us that the act is not obnoxious to the objection that it embraces two subjects, merely because it provides for the purchase of the patent for future cases, or where the patented pavement is to be laid down after the passage of the act. If *past* and *future* assessments be not distinct subjects, so as to

avoid the act, then we think it clear that the provisions for the purchase of the patent for *future* assessments, or so as to make them legal, cannot be regarded as a distinct subject of legislation.

Such provision is auxiliary to, and promotive of, the main object or subject of the act, which is the authorizing of such assessments. It is one of the means appointed by the act for accomplishing the end in view — for making the assessments regular and valid. It is subsidiary to this main purpose, and part of the process by which it may be attained. It has, in the language of the New York authority quoted by counsel, a "necessary or natural connection" with the subject of the act, namely the authorizing of such assessments. This principle that subjects thus subordinate to, and naturally or necessarily connected with the primary or leading subject of the bill, may be included in the bill without rendering the act double or multifarious in the sense of the constitutional prohibition, is distinctly affirmed by the decision of this court in *Phillips v. The Town of Albany*, 28 Wis., 340. The title of the act there (ch. 273, Private and Local Laws of 1870), and to which the same objection was taken, was: "An act to revive and amend the act to incorporate the Sugar River Valley Railroad, approved March 29, 1855, and to authorize certain towns therein named to aid in the construction of said railroad." The position assumed was, that the reviving and restoring the corporate rights and franchises of the railroad company and amendment of its charter, and the authorizing of the towns to aid in the construction of the railroad by subscribing to the stock of the company, were distinct subjects of a private and local nature, which could not be joined in the same act. The court, observing that the act embraced no more than one subject, to wit: the building of the line of railroad named in it, or the creating of a corporation for that purpose, and providing how it might obtain means and facilities for accomplishing it, declared the position untenable and the act to be valid. The court furthermore observed that it was all the same general subject, which was all

the constitution meant. That case seems decisive against the objection here, that authorizing the purchase of the patent in the manner and for the purpose specified, constituted a distinct subject of legislation within the meaning of the clause of the constitution under consideration.

But the objection urged may be regarded as still broader, and so, in fact, we understand some parts of the argument; to-wit., that it is incompetent for the legislature to provide for and legalize both past and future assessments by the same bill. Assessments, or the levying of special taxes to defray the expenses of certain local improvements, whether those improvements are such as have already been made but not paid for, or such as are to be made and then paid for, may, as it appears to us, be properly denominated but one subject, as that word was understood and applied in the constitution. They are one subject, and that subject is localized, or made definite and certain as to the place to be affected, by the name of such place being properly inserted in the title of the bill. It was obviously not the intent of the constitution to divide and multiply the subjects of legislation indefinitely, or so far as they were capable of division into parts, each constituting a separate subject, and then to require each subject to be introduced and enacted by a separate bill, the title of which should express such subject. Such a provision would lead to endless circuity of legislation upon private and local subjects, multiplying bills like the leaves of the forest, and producing the greatest confusion and uncertainty. An ordinary city charter might require as many separate acts as it now contains sections ; and perhaps more would be necessary, since no one can tell where the division of subjects would end. Assessments, divided and made distinct subjects by the terms past and future as applied to this act, might also be divided and distinguished by the name of the ward, the street or the individuals to be affected, as well as in divers other ways. It was possible for the legislature by one act to have provided for re-assessments to defray the expenses of

the Nicholson or any other patented pavement already down, and then by another act to have provided for assessments to pay for laying down the same kind of pavement in the future. This was clearly possible, but we do not think the constitution required it. It is the general subject of the act of which the constitution speaks, and that subject being named and localized in the title, the details and particular provisions or operation of the law, as whether prospective or retrospective, are not required to be so indicated. It is neither usual nor practicable to state the subject of a bill with greater particularity in the title. The custom has always been to state the subject in the most general terms and with the fewest possible words, and to that custom it must be presumed the framers of the constitution intended the legislature should conform.

We are thus brought to consider the more difficult question, whether the subject of the act was properly expressed in the title. The constitution not only requires that no private or local bill shall embrace more than one subject, but that that subject "shall be *expressed* in the title." The legislature might, as we have seen, have made two subjects where the constitution required but one. They might have provided for past assessments by one act, and future by another, indicating the subjects of each by the respective titles of the bills; and if, in either case, the title did not express the true subject as selected and made by the bill, the act must of course have failed. An act authorizing future assessments, under a title indicating only that past assessments were to be affected or legalized, or *vice versa*, would be void. Does the title here indicate both the prospective and retrospective operation of the act, or that it was upon the subject generally of assessments in the city of Madison? It is claimed that it does not, but that *re-assessments* is the distinctive and only subject indicated. That subject is undoubtedly expressed in the title, but is the title not fairly susceptible of a more comprehensive meaning and application? Does it exclude the idea that future assessments, or assessments

in general, were intended; or, otherwise, does it fairly convey the idea that none but past assessments or re-assessments were to be included? As already observed, the subjects of legislation are usually expressed with the utmost brevity and conciseness in these titles, and some consideration must be given to this circumstance in determining the question. The court is not to set aside or declare an act void because the subject was not as fully or as unequivocally expressed as it might otherwise have been. A liberal rule of interpretation must prevail in this respect, not only for the reason just stated, but because the proposition is to strike down and defeat the act of the legislature, which can never be done upon any slight or untenable grounds. It is a truth which has been often asserted and often acted upon by the courts, that to justify the annulling of a statute by judicial sentence, the violation of the constitution must be clear and unmistakable. Considering, therefore, that the statement of the subject is always concise, and hence should be liberally construed to sustain the object of the bill, and that the departure from the constitution must be clear and unmistakable, may not the prospective as well as the retrospective operation of the bill in question be fairly and reasonably said to have been indicated by its title? If the title had read: "An act to authorize the city of Madison to re-assess certain taxes and assessments and to collect certain taxes and assessments," there would then have been, as it seems to us, little doubt that it was sufficiently comprehensive to cover the entire subject of the bill. May not the title as it is, be reasonably understood and interpreted as meaning the same thing? It appears to us that it may, and that such construction is neither strained nor unwarranted, and is that which the court under the circumstances is in duty bound to adopt.

The other principal question involved in this case is one which has become trite, and scarcely an open one, by repeated arguments and decisions in this court as well as in the courts of other states. It relates to the retrospective power of the

legislature over the subjects of assessment and taxation, where past proceedings have proved defective or irregular, either for want of power in the local boards or officers or by reason of non-compliance with some existing provision of law. The cases in which this question has arisen and been decided are quite numerous, and always with one result. The authority of the legislature in this respect has always been affirmed, where the subject acted or operated upon was purely and exclusively one of taxation or assessment, and concerned only the taxing power. It is said by counsel that the very act here in question was passed upon the suggestion of a majority of this court in *Dean v. Charleton*, 23 Wis., 609, where the prior assessment for this same Nicholson pavement was declared void. This case differs in no material point from that of *May v. Holdridge*, 23 Wis., 93, unless it be in the fact that the first assessment here had been declared void by the judgment of a court of competent jurisdiction, and proceedings to enforce and collect the same perpetually enjoined before the curative act was passed. It will be seen by examining the facts in *May v. Holdridge*, as stated on pages 95 and 96 of the report, that the original proceedings there were as void, for want of authority in the aldermen, as it is possible to conceive the original proceedings to have been here; and yet the power of the legislature to legalize and authorize the re-assessments was upheld. In that case, Mr. Justice PAINE says that "these special assessments for local improvements are to be regarded as one of the constitutional modes of taxing the citizen for the public benefit. And, whenever defective proceedings for that purpose have been had, these must present the same basis for the application of the corrective power of the legislature that would be furnished by defective proceedings to assess a general tax."

The principle upon which these and other similar decisions rest, is, that the taxing power, when acting within its legitimate sphere and unrestrained by positive constitutional provision, is a far reaching and unlimited power, which knows no stopping

place nor moderation of force until it has accomplished the purpose for which it exists, namely, the actual enforcement and collection of the tax.   It moves constantly forward to its object until that is accomplished, and, if turned aside by any obstacles or impediments, may return again and again to the same tax or assessment until, the way being clear, the tax is paid or the assessment collected.   Such is the force of this power, or of the sovereign body which exercises it, that it may remove all obstacles and never cease to act until it has attained the appointed end for which it was delegated.   "The power to impose taxes," says Judge COOLEY, (Constitutional Limitations, 479), "is one so unlimited in force and so searching in extent that the courts scarcely venture to declare that it is subject to any restriction whatever except such as rest in the discretion of the authority which exercises it.   It reaches to every trade or occupation; to every object of industry, use or enjoyment; to every species of possession; and it imposes a burden which, in case of failure to discharge it, may be followed by seizure and sale or confiscation of property.   No attribute of sovereignty is more pervading, and, at no point does the power of government affect more constantly and intimately all the relations of life, than through this power."   Attention is also directed to the remarks of the same learned author on page 488, and of Chief Justice MARSHALL in *McCulloch v. State of Maryland*, 4 Wheat., 428.   It is of the very nature, therefore, of this power, that it may be thus retroactively exercised, and errors and defects in past proceedings cured, or declared not to invalidate those proceedings, whether such errors or defects arose from want of power in the taxing officers or from any other cause.

In a late case in the state of Vermont, where this same subject was under consideration, and the retroactive power of the legislature sustained, the supreme court, speaking of the obligation resting upon the inhabitants to contribute to the public charges and expenses of government, say : " That obligation is

imposed by law, and is sometimes likened to a contract whereby the government undertakes the protection of the individual in the enjoyment of his rights of person and property, and the individual promises to obey the laws and to contribute according to his means to defray the charges and expenses of the government. Here the theory of a contract seems to terminate. The proceedings to be adopted for the enforcement of this obligation on the part of the individual, are matters that rest *entirely and absolutely* with the government; and these proceedings, we apprehend, are not in the nature of a contract between the government and the individual, as claimed by the counsel for the plaintiff, and which the government, having once adopted, are not at liberty to change, alter or abolish, at pleasure." *Bellows v. Weeks*, 41 Vt., 590, 599. And in a like case, *Weister v. Hade*, 56 Pa. St., 479, it was held that "the maxim '*omnis ratihabitio retrotrahitur et mandato equiparatur*' is applicable to the public as well to individuals. There is no less reason to apply the right of ratification to the legislative power, which, by possession of the right of making laws, gives to its ratification greater effect." And so in another case of the same kind, *Ginn v. Weissenberg School District*, 57 Pa. St. 433, it was decided that if the legislature has antecedent power to authorize a tax, it can cure, by a retroactive law, an irregularity or want of authority in levying it, though thereby a right of action which had vested in an individual should be divested. And the same principle is maintained in *Musselman v. The City of Logansport*, 29 Indiana, 533.

It has been sometimes supposed that the case of *Hasbrouck v. The City of Milwaukee*, 13 Wis., 37, is in conflict with this principle, but a moment's consideration will show that it is not. The question there was not as to the power of the legislature to ratify or correct proceedings defectively taken for the assessment or collection of taxes, but as to its power to create a contract which should be binding upon the municipality, without the consent of the people thereof, or of some officer or officers rep-

resenting them.. It was a question as to the power of the legislature to infuse life into a void contract, against the will of the voters and tax-payers of the city, and without the assent of the common council, which alone was authorized to act in their behalf. The taxation in that case, which would have resulted from the creation of a valid contract on the part of the city, was taxation in the course of a special proceeding, and that for which a special *enabling* act was required, and not taxation for purely public purposes, over which this unlimited power of legislation prevails. It was a species of taxation which, it has been held, the legislature may authorize subject to the ratification or consent of the proper local authorities or of the people of the municipality, but not without such ratification or consent. In the language of the justices of the supreme court of Maine (58 Maine, 597), it required the contract or "consensual act" of such local authorities, or of the people, to give it validity and effect. And even in New York, where the courts have gone farthest in upholding this general power of taxation, and where, in a recent case, it was held that the legislature might, without the assent of the inhabitants or of the officers of a town, directly impose taxes upon the property of such inhabitants, and compel the issue of bonds by such town to defray the expenses of laying out and working certain highways within the towns, the chief judge, in delivering the opinion of the court, says : "If the object of the expenditure was private, or if the money to be raised was directed to be paid to a *private corporation who were authorized to use the improvements for private gain*, the question, in my judgment, would be quite different ; and in this respect there is a limit beyond which legislative power cannot be legitimately exercised." And the opinion further proceeds: "But the defendants cannot avail themselves of this principle. Here the purpose is confessedly public, and the taxing power for such purposes is restrained only by restrictive provisions." *The People v. Flagg*, 11 Am. Law Reg., N. S., 82. It would be, for example, something new to this court were it to be held that

the legislature could compel a town or city to subscribe to the stock of a railroad company, or directly impose taxes for that purpose, without the assent of the people of the town, or city, or of their officers.   We are not aware that legislative action of this kind has ever yet been attempted by any legislative body; or that it has received the sanction of any judicial decision.   It will be seen from the note to the above case of *The People v. Flagg*, that the decision there made is opposed by several respectable authorities, in which it has been held that taxation for *local* public purposes, such as the improvement of streets and highways, must receive the assent of the *proper local* authorities, or of the people of the locality to be taxed.

Such right of local self-government, undisturbed by legislative interference, is indicated in a most able opinion by Judge COOLEY, in a cause just decided in the supreme court of Michigan.   *People v. Hurlburt*, 6 Am. Law Review, 376.   It is opposed to all our ideas upon the subject, that the legislature might in the first instance have imposed a tax upon the city of Milwaukee for the improvement of the harbor, without the assent of the people of that city, or of the common council, or that the legislature might do the same thing with respect to a municipal subscription to the stock of a railroad company. And the following authorities in addition to those cited in *Hasbrouck v. Milwaukee*, distinctly affirm the same principle; *Brunswick v. Litchfield*, 2 Greenl., 28; *Bowdoinham v. Richmond*, 6 id., 112; *Medford v. Learned*, 16 Mass., 216; *Atkins v. Randolph*, 31 Vt., 226, 236; *The People v. The Mayor, etc., of Chicago*, 51 Ill., 17 (2 Am. R., 278); *King v. Dedham B'k*, 15 Mass., 422; *Milwaukee v. Milwaukee*, 12 Wis., 99 to 112, and cases cited. If the legislature in such cases has no compulsory power of taxation, and can only, by a proper enabling act, submit the matter to the action of the local officers or of the people of the municipality, it would seem to follow that it has no power to cure defects, or to waive or supply omissions in past proceedings, against the will of the corporation to be charged.   The

legislature may, in its discretion, authorize a minor to mortgage his land in a particular manner and for a particular purpose; but if, in the supposed execution of the power, the minor should proceed in a different way or to mortgage for a different purpose, the instrument would of course be void. Could the legislature, by retroactive measures, obviate the defect, and declare that a valid contract which before was void, against the will of the person whose estate was to be charged? It has seemed to this court that it could not, and that the case of a contract, void as against one of these municipal corporations, stood upon the same ground. But the case of taxation for a strictly public municipal purpose, as, to defray the ordinary expenses of the municipal government, either in providing suitable roads and bridges or for any other thing of acknowledged public necessity, depends, as we have seen, upon an entirely different principle. In the latter case, the power of the legislature, subject only to the constitutional rule of uniformity where that rule applies, is most ample and unrestricted; and, inasmuch as the act here only authorized the common council in its discretion to re-assess the taxes, and did not command or compel such re-assessment, or make the re-assessment, and so is unobjectionable within all the authorities, the court is bound to hold that it is in all respects both valid and constitutional.

Some observations are necessary upon the point that a judgment had been obtained by the plaintiff enjoining the collection of the taxes upon the first assessment. It is an undoubtedly correct general principle, that a statute which operates to annul or set aside the final judgment of a court of competent jurisdiction, and to disturb or defeat rights thus vested, is inoperative and void. This question is most ably examined by Chief Justice BIGELOW, in *Denny v. Mattoon,* 2 Allen, 361; and it may be safely asserted as a rule without exception, that the legislature has no such power in any matter of mere *private* right. It may also be asserted as true, that the legislature has no power to open or set aside the *judgment itself,* where the

matter or thing in controversy concerned the *public*. This was so held in *The Town of Lancaster v. Barr*, 25 Wis., 560. Mr. Sedgwick, in his most excellent treatise on statutory and constitutional law, page 177, lays down as his fourth correct conclusion, to be deduced from the decided cases, the following: "That a statute which, *without some controlling public necessity, and for public objects*, seeks to affect or interfere with vested rights of private property, is equally beyond the true limits of legislative power." It will be conceded by all, we think, that the raising of money by taxation is a *controlling public necessity and for a public object*. The books everywhere abound in expressions showing it to be such. "The power of taxing the people and their property," says Chief Justice MARSHALL, in *McCullough v. The State of Maryland, supra*, "is essential to the very existence of government, and may be legitimately exercised in the object to which it is applicable to the utmost extent to which the government may choose to carry it." The re-assessment of a tax, the proceedings for the collection of which have once failed, is not a re-opening of the judgment by which such former proceedings were declared invalid. Such judgment remains a perpetual stay of the proceedings to enforce the first assessment, but it only affects that assessment, and does not operate upon new proceedings subsequently taken to re-assess. It is a judgment *merely in abatement of the original proceedings*, and by which they are annulled, and not one affecting the ground work or basis of the tax itself, upon which the legislature may again proceed in the exercise of its unrestricted power over the subject. The original proceedings having failed for reasons which the legislature may lawfully obviate, and the basis for taxation still remaining, namely, the public benefit or improvement received, for which the legislature say the property of the citizens should pay, a re-assessment may be authorized.

This conclusion as to the effect of the judgment seems to follow, not only from the nature of the action in which it was ren-

dered and the grounds of it, but also from the unlimited force and operation of the taxing power as we find it constantly recognized and defined. Should the general state tax for any one year fail for some irregularity, or for want of authority in the taxing officers, could it be for a moment admitted, under any circumstances or upon any pretense, that the power of re-assessment or relevy did not exist ? It appears to this court not, and that the same principle which must apply to and govern that case must equally apply to and govern every other case of taxation for a confessedly public purpose.

Another question which arises in this case is as to the application of the principle, that he who asks equity must do equity, to a state of facts from which it appears that one parcel of the plaintiff's land was by mistake re-assessed for a larger sum than was properly chargeable thereto, the amount of such excess being plainly ascertainable by inspection of the assessment roll. The parcel in question was re-assessed for the sum of $535.88, when it should have been re-assessed only for the sum of $364.67. The point presented is, whether the plaintiff should be required to pay the latter sum as a condition of relief in the action. It was remarked by the court in *Dean v. Charleton*, 23 Wis., 608, that this equitable principle had never been applied to these special assessments, and the court refused to apply it then, because *the whole assessment was without legal authority.* The case as now presented is entirely different. The re-assessment here is *by legal authority*, except so far as it is vitiated by the mistake, which part is clearly distinguishable. The court perceives no reason for refusing to apply the principle to such a case, any more than to any other case of mistake or distinguishable excess in matters of taxation. As observed in *May v. Holdridge, supra*, these special assessments for local improvements are to be regarded as one of the constitutional modes of taxing the citizen for the benefit of the public; from which it seems to follow, that any equitable principle or rule which applies to other constitutional modes must with equal propriety

be applied to this. A tax lawfully imposed, whether in one mode or another, must be regarded as equally just, and equally entitled to favor in the consideration of a court of equity.

*By the Court* — The judgment of the court below is reversed, and the cause remanded for further proceedings according to law.