Single vs. Supervisors of Marathon County and others.

38  363
96  85

38  363
100  669

38  363
109  15

38   363
53 LRA  639

Municipal Corporations: Supervisors: Subscriptions to Railroads. (1) *Legislature may empower supervisors to exchange lands and tax certificates for railroad stock.* (2) *A grant of such power to a single county only, valid.* (3) *Legislature may subsequently legalize contract of supervisors.* (4) *Title of statute held sufficient.* (5) *Resolution by supervisors a sufficient ratification of statute.*

1. The legislature can empower county boards of supervisors, in the first instance, to exchange lands and tax certificates of the county for stock of railroad companies, for the purpose of aiding the construction of roads extending into their respective counties; and this, whether such exchange is to be made directly with the company or with a third party.

2. An act which grants the power above described to a single county only does not violate the unity or uniformity in the system of county government, required by sec. 23, art. IV of the state constitution. The decisions of this court sustaining such legislation have become a settled rule of property, and cannot be disturbed.

3. The legislature may *subsequently legalize* any contract or agreement of a board of supervisors, or other municipal authority, which it could have authorized in the first instance. 26 Wis., 33; 27 id., 147.

4. Ch. 7, Laws of 1874, declares valid certain proceedings of the supervisors of Marathon county at two different meetings, at one of which they agreed to subscribe for stock of a railroad company, and pay therefor by conveying to the company lands bid off to the county for delinquent taxes, while at the other they directed their clerk to assign to certain persons tax certificates held by the county, and receive from such persons an assignment of certain additional stock in said railroad company. The *title* of said act ("An act to legalize certain acts of the board of supervisors of Marathon county"), *held* a sufficient compliance with sec. 18, art. IV of the constitution.

5. A resolution of a board of supervisors, adopted after the passage of a legislative act, reciting that they had previously authorized a memorial to be presented to the legislature for the passage of the act, and declaring their assent to it as passed, *held* a sufficient ratification of the act, if any was needed.

APPEAL from the Circuit Court for *Marathon* County.

The board of supervisors of Marathon county, at a meeting thereof held March 15, 1873, by resolution duly adopted, directed its chairman and clerk to execute a contract on behalf of such county with the Wisconsin Valley Railroad Company, in and by which the county should agree, on certain conditions (one of which was, that the company should construct its railroad from Centralia in Wood county to Wausau in Marathon county, by a day therein specified), to subscribe for 250 shares of the capital stock of such company, the par value of which was $25,000, and to pay for the same by conveying to

the company, in installments as the work on the railroad should progress, 200,000 acres of land owned by the county. It is understood that these lands had previously been sold and conveyed to the county, according to law, for nonpayment of the taxes theretofore assessed thereon. The contract was executed on the same day by the company, and by the said chairman and clerk on behalf of the county, and the seal of the county is affixed thereto.

The same board of supervisors, at a meeting thereof held September 4, 1873, adopted the following order or resolution : "It is hereby ordered and determined by the board of supervisors of Marathon county that the county clerk of Marathon county be and is hereby authorized and directed to assign to the parties who obligated themselves to pay $25,000 in aid of the Wisconsin Valley Railroad Company, a like amount of tax certificates at their face value, now in the hands of the county, and to receive therefor, in consideration thereof, a like amount of the common stock of said railroad company." It is stated in the brief of counsel who seek to have the foregoing resolution reversed and set aside, that the parties mentioned therein, "in order to secure the early building of the railroad to Wausau, gave their private notes to the railroad company, payable in ninety days, for $25,000, taking from the railroad company $25,000 of its common stock."

In September, 1873, *Benjamin Single*, a resident and taxpayer in Marathon county, sued out of the circuit court for said county a writ of *certiorari* to remove the proceedings of September 3d to that court for review. In November of that year, *Single* sued out of the same court a like writ to bring up for review the proceedings of March 15th above set forth. The county clerk made return to the circuit court of the foregoing proceedings of the board of supervisors. In each case the return was made within a few days after the writ was issued.

Afterwards, in obedience to an order of the circuit court, dated April 15, 1874, the county clerk made a further return to each of said writs. Those returns disclose the following additional proceedings by the board of supervisors:

"At a special meeting of said board, duly called and held on the 22d day of January, 1874, it was voted to adopt a memorial to the legislature of the state to pass an act to authorize the county board to convey county lands in aid of a railroad. The clerk was authorized to forward the memorial to the member from this county. It was voted that Mr. C. A. Single be requested to proceed to Madison as soon as possible to aid in the speedy passage of such an act.

"Also at a special meeting of said board, duly called and held on the 26th day of March, 1874, the following resolution was presented and adopted: 'Whereas, the board of supervisors of the county of Marathon did, on the 22d day of January, 1874, authorize C. A. Single, a member of said board, to present to the legislature of the state of Wisconsin a memorial asking and praying such legislature that such action be taken as would ratify and confirm all acts of the board of supervisors of said county in relation to aid the building of the Wisconsin Valley Railroad to Wausau; therefore resolved, that the board of supervisors concur in the acts of C. A. Single in procuring the needed legislation, and that full assent is hereby given to the law appertaining thereto in chapter 7 of the laws of this state for the year 1874, and approved January 30, 1874, entitled an act to legalize certain acts of said board of supervisors of Marathon county; and that the acts of C. A. Single, a member of this board, in securing such legislation, are hereby ratified and approved.'"

Ch. 7, Laws of 1874, entitled "An act to legalize certain acts of the board of supervisors of Marathon county," approved January 30, 1874, is as follows: "SECTION 1. The action of the board of supervisors of Marathon county, as assembled on the 15th day of March, A. D. 1873, in contracting

and granting certain county lands, and all subsequent acts relating thereto ; and also the action of said board of supervisors of Marathon county, as assembled on the 4th day of September, A. D. 1873, in ordering the assignment and in disposing of certain certificates of sale of lands for taxes, all in relation to aid in the construction of the Wisconsin Valley Railroad, are hereby ratified and declared valid, legal and binding for the intents and purposes designed by any and all of said acts, and the same shall be so held in all courts and places; and the said county of Marathon is hereby authorized and empowered to hold and control the railroad stock taken in consideration of said acts, for the benefit of said county as by law provided in such cases.   SECTION 2. This act shall take effect and be in force from and after its passage."

The circuit court affirmed the proceedings of the board of supervisors of March 15, 1873, and adjudged that the contract between the county and the railroad company, executed on that day, was and is a valid and lawful contract; but reversed the proceedings of September 4, and ordered them cancelled, holding and adjudging the order or resolution adopted on that day wholly illegal, nugatory and void.

Appeals were taken to this court, from the judgment of affirmance in the one case, and from the judgment of reversal in the other.

*Park & Jones*, with *G. L. Park* of counsel, for plaintiff, argued that the subscription and contract made by the supervisors with the railway company were beyond their powers.   R. S., ch. 13, secs. 35, 36.   The powers granted by statute to such boards, with such incidental powers as are necessary to carry into effect express grants, are the limit to their authority.   Neither the corporation nor its officers can do any act, or make any contract, or incur any liability binding the municipality, which is not authorized by such power.   Dillon on Mun. Corp., § 55. Nor can they incur debts or borrow money in order to become subscribers to the stock of a railway company, this being for-

eign to the objects of a municipal government. Dillon, § 106; *People v. Mitchell*, 35 N. Y., 551. To the same effect is the decision of this court in *Fisk v. City of Kenosha*, 26 Wis., 23. 2. Ch. 7, Laws of 1874, legalizing the meeting of the county board of March 15, 1873, presents the question how far such remedial laws can reach, by their own force, in rendering legal and binding what had no legal existence prior to such laws. It is conceded that the legislature has the power to pass retrospective laws to effect remedies or cure irregularities in proceedings warranted by law. Where such proceedings are imperfect by reason of irregularities, such imperfections and irregularities may be healed by laws legalizing the manner of doing them. But such legislation cannot disturb vested rights. Cooley's Con. Lim., 358; 19 Wis., 17; Sedgwick on Stat. and Con. Law, 199 et seq. The true rule is, that if the defect in the proceedings is something which might have been dispensed with by prior statute, or if the irregularity is in the manner of doing something which the legislature might have made immaterial, it is competent to make the act, or the manner of doing it, immaterial by a subsequent law. Cooley on Con. Lim., 371; Dillon on Mun. Corp., §§ 43–46. And this limit is the just line of legislative power to pass retrospective laws. But the acts of the supervisors in this case were wholly void. There is no pretense of a statutory power imperfectly executed, no claim of attempting to do a lawful act and doing it irregularly; but a simple violation of public duty in office; an alienation of public property to a private corporation, without authority of law. The contract was, therefore, entirely *ultra vires*. If, by this retrospective act, the proceedings are validated, they become the subscription and contract of the legislature, and not of the board of supervisors. Nor could the subsequent assent of the board make valid what they could not accomplish before; but the ratification, to be effective, must be by the voters and tax payers. See *Wahlschlager v. Town of Liberty*, 23 Wis., 362; *Mills v. Charleton*, 29 id., 400.

3. Had this act, authorizing this sale of tax certificates for railroad stock, been passed before the sale, would it not have violated secs. 22, 23, art. IV of the state constitution, which require the legislature to provide for but one system of county government, as nearly uniform as practicable? Laws which distribute, or annul, or add to, the powers of a county board of supervisors, and are not extended to all the counties of the state, are unconstitutional. 24 Wis., 484. If the legislature had by law granted to the board of supervisors power to make contracts, convey lands to railroad companies in aid of their railroads, subscribe for railroad stock, and pay for the same with public property, and such extraordinary powers were not held by all boards of supervisors in the state, it seems clear that the uniformity of county government would thereby be destroyed. If this be correct, it follows, of course, that the exercise of such powers by the county board cannot be legalized by retroactive statutes.

*W. C. Silverthorn* and *E. L. Bump*, for respondents, contended that it is the settled law of this state that the legislature may authorize municipal corporations to subscribe for railroad stock in aid of the construction of railroads. *Phillips v. Town of Albany*, 28 Wis., 340; *Laws on v. R. R. Co.*, 30 id., 597. Having the power to authorize railroad aid by subscriptions for stock in the first instance, it has the power to validate defective subscriptions. *St. Joseph Township v. Rogers*, 2 Am. R. R. Rep. (Mallory) 105 (16 Wall., 662); *Blount v. Janesville*, 31 Wis., 648. And any method of aid and subscription for stock may be authorized, a vote of the people on the subject being only permissive. *Bay City v. State Treasurer*, 1 Am. R. R. Rep., 96; *St. Joseph Township v. Rogers, supra; Keithsburg v. Frisch*, 34 Ill., 405. To the point that the legislature may lawfully enact retrospective statutes of this nature, counsel cited *Town of Danville v. Page*, Court of Appeals of Va., Alb. L. J., July 25, 1874; *Underwood v. Lilly*, 10 S. & R., 101; *Foster v. Essex Bank*, 16 Mass., 245; *Oriental Bank v. Freeze*,

18 Me., 109; *Rich v. Flanders*, 39 N. H., 304; *Watson v. Mercer*, 8 Pet., 88. Such laws raise questions of policy, not the subject of judicial investigation. Cooley's Con. Lim., 373, 374.

LYON, J. For the purposes of these appeals it will be assumed that the proceedings of the board of supervisors on the 15th of March and the 4th of September were without authority of law, and, but for the legislation of 1874, that the same are entirely void. We are thus brought at once to consider and determine the validity and effect of that legislation.

1. It is claimed that ch. 7, Laws of 1874, is void because the subject thereof is not expressed in the title, as required by the constitution, art. IV, sec. 18. The question as to what is a sufficient entitling of a private or local act, was much considered in *Mills v. Charleton*, 29 Wis., 400, and in *Evans v. Sharp*, id., 564. Numerous cases on the subject are cited by DIXON, C. J., in *Evans v. Sharp*. Without enlarging upon the question here, it is sufficient to say that, within the principle established by these cases, the entitling of the act under consideration is a compliance with the requirement of the constitution in that behalf.

2. The next question is, Has the legislature power to legalize and render valid the unauthorized acts of the board of supervisors?

The proceedings of the board of supervisors of March 15th and September 4th amount simply to a contract in form in one case, and a proposition in the other, to purchase the capital stock of the Wisconsin Valley Railroad Company, and to pay for the same in lands and tax certificates owned by the county. The fact that a portion of this stock was owned by individuals, seems quite immaterial. No difference in principle is perceived between a proposition to buy stock of an individual and one to buy it of the railroad company itself, the purpose and object of the purchase being the same in both cases. That the legislature could have conferred upon the board of

supervisors, in the first instance, full power to exchange the lands and tax certificates of the county for capital stock of the Wisconsin Valley Railroad Company, for the purpose of aiding that company to construct its railroad to Wausau, is now too well settled to be denied or questioned. Had such authority been conferred by the 'legislature before the action of the board of supervisors in that behalf, it seems clear that such action would have been valid.

The extent of the power of the legislature to enact curative laws, and the rule by which, in a case like this, it is to be determined whether the power exists, is stated by Judge COOLEY in his treatise on the constitutional limitations of legislative power. Speaking of contracts by municipal corporations, which, when made, were in excess of their authority, but subsequently have been confirmed by legislative action, he says; " If the contract was one which the legislature might originally have authorized, the case falls within the rule we have laid down, and the legislative action is to be sustained. Some of the cases where municipal subscriptions in aid of railroads were held valid, were cases where the original undertaking was without authority of law, and was confirmed by retrospective act of legislation." p.. 379. This rule is sustained, and we think established, by numerous adjudged cases, some of which are cited in the brief of counsel for the board of supervisors. See *Fisk v. Kenosha*, 26 Wis., 33 (per DIXON, C. J.), and *Knapp v. Grant*, 27 id., 147. Tested by this rule, the act of 1874 is a valid law, the effect of which is to render the proceedings of the board of supervisors as valid as they would have been had the board acted under competent authority in the first instance. Had the board possessed such authority when it acted, we think no taxpayer of the county could be heard to complain of its action, and it follows from the foregoing views that no such taxpayer can now be heard to complain thereof. It may be observed in this connection, that if ratification of the act of 1874 on behalf of the county is es-

sential for any purpose, such act was fully ratified by the reso-
lution of the board of supervisors adopted March 26, 1874.

3. But it is claimed that the act of 1874 violates sec. 23, art.
IV of the constitution, which ordains that "The legislature
shall establish but one system of town and county government,
which shall be as nearly uniform as practicable."

The act of 1874 is equivalent to a law giving the board of
supervisors of Marathon county authority to aid the Wisconsin
Valley Railroad Company in the construction of its road to
Wausau, by subscribing for or purchasing a certain amount of
the capital stock of that company. It differs from ordinary
special acts giving the same authority to municipalities, only
in this: in such enactment the municipality is usually author-
ized to contract a debt for the stock, while the act of 1874 does
not authorize the county of Marathon to do so. Manifestly,
as regards the constitutional provision above quoted, the act of
1874 stands on the same footing with all other special acts
granting similar powers to specific towns or counties. This
court has frequently and uniformly sustained such legislation,
and doubtless large investments have been made on the faith
of those adjudications. They have thus become a rule of
property, and must not now be disturbed.

Were the question a new one, I apprehend it would not be
difficult to show that the purchasing of railroad stock by towns
or counties does not pertain to the *system* of town and county
government, and hence that special acts of the legislature con-
ferring the power to do so are not within the constitutional
provision under consideration. But, for reasons already stated,
it is unnecessary to determine the question as an original one.

It follows from the views above expressed, that the judg-
ment of the circuit court confirming the proceedings of the
board of supervisors of March 15, 1873, must be affirmed;
and that the judgment which annuls and vacates the proceed-
ings of September 4, 1873, must be reversed.

*By the Court.* — It is so ordered.