## THE BOARD OF SUPERVISORS OF MILWAUKEE COUNTY VS. PABST and others.

OFFICIAL BOND: MILWAUKEE COUNTY COURT-HOUSE FUND. *(1–3) Liability, of sureties on treasurer's special bond.*
CONSTITUTIONAL LAW: *(4) Act creating special court-house fund valid.*

1. Ch. 400, P. & L. Laws of 1871, required the special bond there described to be given, not only by the treasurer of Milwaukee county who was charged with negotiating the county bonds there authorized, but by his successors in office who should have the safe-keeping and disbursement of the special "court-house fund." *Supervisors v. Ehlers and others, ante,* p. 281.
2. The bond sued upon in this case, given by the treasurer of said county, followed exactly the requirements of the statute, except that it omitted a condition rendered unnecessary by the fact that the county bonds had all been sold, and nothing remained to be done by the treasurer but to keep the fund safely and pay it over as required by law. *Held,* that it was a good statutory bond.
3. Said ch. 400 of 1871, creating a special court-house fund for Milwaukee county, to be raised by the issue and sale of county bonds, and requiring the treasurer to give a separate bond therefor, does not contravene the constitutional rule of uniformity in county government; nor can it be pronounced invalid as contrary to public policy.

APPEAL from the Circuit Court for *Milwaukee* County.

Action on the special bond given by *Edward Ehlers* as treasurer of Milwaukee county, for the safe-keeping and disbursement of moneys in his hands belonging to the "court-house fund," created pursuant to ch. 400, P. & L. Laws of 1871. The complaint alleged a failure of said *Ehlers* to keep safely, disburse, and pay over according to law a certain portion of said fund. After the action was commenced, *Ehlers* died. The sureties demurred to the complaint as not stating a cause of action; and the plaintiff appealed from an order sustaining the demurrer.

For the appellant, there was a brief by *Jared Thompson, Jr.,* and *J. C. McKenney,* and oral argument by *Mr. Mc Kenney.* They contended, 1. That the bond was a good statutory bond under sec. 3, ch. 400, P. & L. Laws of 1871

2. That, if otherwise, it was a good common-law obligation. *Lewis v. Stout*, 22 Wis., 234; *Todd v. Cowell*, 14 Ill., 72; *U. S. v. Tingey*, 5 Pet., 115; *U. S. v. Linn*, 15 id., 290; *U. S. v. Mason*, 2 Bond, 183; *F. & M. Bank v. Polk*, 1 Del., 167; *Bank of N. L. v. Cresson*, 12 S. & R., 306; *Slauson v. Ker*, 29 La. An., 295. 3. That if the bond was not required by law, but given in ignorance of the law, under a belief that it was so required, such ignorance would be no defense. *U. S. v. Hodson*, 10 Wall, 395; *Sooy v. State*, 38 N. J. Law, 324. There is nothing in the complaint which shows duress

For the respondents, there was a brief by *Cotzhausen, Smith, Sylvester & Scheiber*, and oral argument by *Mr. Cotzhausen*. They contended, 1. That the act of 1871 was not intended to apply to the successors of the treasurer of Milwaukee county then in office, and the bond in suit is not a statutory bond. The form of the bond prescribed by that act, the rights conferred, the duties assigned and the compensation made by it, all have reference to the person entrusted with the care and sale of the court-house bonds in the first instance. The bond in suit is therefore not the one contemplated by that act. 2. That the rule that voluntary bonds may be good common-law obligations does not apply to a bond exacted of an officer as a condition precedent to his exercise of the functions, or receipt of the emoluments, of his office. *U. S. v. Tingey*, 5 Pet., 125. 3. That this special bond, although not expressly forbidden by statute, violates the letter and spirit of our general legislation; is in contravention of public policy; infringes upon the rule of uniformity in county government; and on the part of the county board was *ultra vires*. To the point that a bond is invalid which contravenes the spirit of the general legislation of a state, they cited *Webb v. Alberton*, 4 Barb., 51; *Reilly .v. Ins. Co.*, 43 Wis., 449. They further contended that sound policy and the general legislation of this state forbid a multiplicity of official bonds, and division of liability resulting therefrom; that this bond contravenes especially ch. 65, Laws of 1872, "An act to provide for the depositing of the funds" of counties; and that the supervisors of Milwaukee county had

no authority to take a bond like that in suit, at the time when it was taken; and to the point that an act authorizing such a bond is a needless violation of the uniformity of county government, they cited *State v. Supervisors*, 25 Wis., 339; *State v. Brunst*, 26 id., 413; *State v. Dousman*, 28 id., 541; *McRea v. Hogan*, 39 id., 529; *Rooney v. Supervisors*, 40 id., 27.

TAYLOR, J. For the reasons stated in the opinion in the case of the *County Board of Supervisors of Milwaukee County v. Ehlers and others, ante,* p. 281, we hold that the treasurer, *Ehlers,* was required, by ch. 400, P. & L. Laws of 1871, to give the special bond required by sec. 3 of that act. The principal question which is decisive of this case, is ruled by that decision. The bond upon which the action in this case is founded, is therefore a good statutory bond; and it becomes entirely unnecessary to consider the question whether it could be held good as a voluntary bond.

The bond given is substantially like the bond required by statute; the only change being an omission of a condition which was rendered unnecessary from the fact that the bonds themselves had all been sold by the predecessor of *Ehlers,* and nothing remained to be done except to keep the funds arising from such sale, and pay over the same as required by law. This change, made for the purpose of conforming to the actual state of the facts, does not change it from a statutory to a voluntary bond.

It is urged by the counsel for the respondents, that the law creating this special fund and requiring the treasurer to give a separate bond to secure the county for its proper application, is unconstitutional and void, as contravening the rule of uniformity in county government. We do not think there is any force in this objection. If the law requiring the treasurer to give a separate or additional bond to secure the proper administration of a special fund created for a special and temporary purpose, violates this constitutional requirement, it would be difficult to make any law providing for the raising of a special fund in any county for any purpose, which did not apply to

all the counties in the state. The objection would apply with greater force to that part of the act which provides for the construction of the court house itself; and especially to that part of the act which authorized the county to issue and sell its bonds to raise the funds for that purpose. We know of no general law for the government of counties which prescribes any particular mode of raising funds for the purpose of building court houses. The general law authorizes the erection and maintenance of such houses; but the method of doing the same is not pointed out; and we think, in the absence of any such general law, each county may proceed to raise the funds for that purpose in any lawful way, and provide for its safe-keeping and disbursement in such manner as may be deemed best for the particular county interested, and that a law prescribing the manner of raising such funds and for its safe-keeping and disbursement is not obnoxious to the charge of being in violation of the rule of uniformity of county government because it is applicable to but one county. *Single v. Supervisors*, 38 Wis., 363; *State ex rel. Grundt and others v. Abert*, 32 id., 403.

The argument that a law requiring a county treasurer to give more than one bond for the safe keeping of the public funds in his hands, is against public policy, and therefore void, does not appear to us entitled to that weight which is given to it by counsel. It may be inconvenient to the officers, and perhaps increase the difficulties in the way of a recovery for an alleged breach of such bonds. These, however, are questions with which the legislature are to deal, and do not render the law authorizing it void. If our statutes are to be consulted for the purpose of establishing the rule that public policy is against requiring the same officer to give more than one bond for the faithful discharge of his duties as such officer. they will be found to conflict with such rule. By sec. 87, ch. 15, R. S. 1858, the town treasurer is required to give a bond to the supervisors of the town, conditioned that he will faithfully discharge the duties of his office, and faithfully and truly account for and pay over according to law all moneys which

shall come to his hands as treasurer; by sec. 32, ch. 130, Laws of 1868, such treasurer is required to give a bond to the county conditioned for the like faithful performance of his duties, and that he will pay over according to law all state and county taxes which shall come to his hands; and by sec. 14, ch. 537, Laws of 1865, he is required to give a third bond, conditioned for the faithful application and disbursement of the drainage funds which may come to his hands. By sec. 123, ch. 13, R. S. 1858, the county treasurer is required to give a bond conditioned generally for the faithful performance of his duty, and to pay over all moneys that shall come to his hands as treasurer, and to faithfully account, etc.; and by sec. 13, ch. 537, Laws of 1865, he is required to give another bond for the faithful disbursement of all drainage moneys which shall come into his hands as such treasurer. These enactments dispel the idea that the laws of the state have established a public policy in favor of requiring but one official bond from the same officer. If it be urged that in these cases the funds to be received and disbursed by the public officer are separate and distinct funds, for the safe-keeping and disbursement of which he is to give the separate bonds, it might be answered that there would be no difficulty in requiring the one bond to cover all the funds which might by any provision of law come to his hands; and if it be further urged that the amount of these distinct funds which may come into his hands is uncertain at the time the officer is required to give his general bond, and therefore the necessity of giving the other bonds when the amount of these funds has been ascertained, the same argument could be made with great force in favor of a law which authorizes the raising of an extraordinary fund for a temporary purpose, which is to come into the hands of a treasurer or other public officer after he has been elected and qualified and has given his general bond, requiring the giving of an additional bond to secure the faithful application of that fund.

The question of multiplicity of official bonds is a matter entirely within the province of the legislature; and if, in its wisdom, it should require of every public officer into whose

hands separate funds, applicable to separate purposes, should come, to give a separate bond for the faithful application of each such fund, it would be difficult for this or any other court to find a reason for declaring such enactment void.

*By the Court.* — The order of the circuit court sustaining the demurrer to the complaint is reversed, and the cause remanded for further proceedings according to law.